The United States District Court for the Northern District of Alabama has certified to this Court two questions regarding whether an insurer can obtain reimbursement from its insured for a payment it has made to its insured to settle a claim of a third party against its insured, if it is later determined that the insured's liability policy did not provide indemnity coverage for the third party's claim.
 I.
The Doe law firm represented Samuel Davison, a plaintiff who had been injured in an automobile accident that occurred on December 5, 1989. The Doe law firm filed a complaint against several defendants in the St. Clair Circuit Court on May 28, 1991, but had it voluntarily dismissed in September 1991. Apparently, the Doe law firm intended to refile the complaint in the Jefferson Circuit Court, but failed to timely do so. On April 9, 1992, the Doe law firm moved to reinstate the case in the St. Clair Circuit Court, and the court did so. The case went to trial in January 1993, and the jury returned a verdict in favor of Davison for $125,000. On appeal, this Court ruled that the circuit court had erred in reinstating the case and set aside the judgment for Davison.
On February 8, 1994, the Doe law firm put its professional liability insurance carrier, Mt. Airy Insurance Company (hereinafter referred to as "Mt. Airy"), on notice of a potential malpractice claim against it. In response, on July 25, 1994, Mt. Airy filed a *Page 536 
declaratory judgment action in the United States District Court for the Northern District of Alabama. Mt. Airy sought a judicial determination of whether the liability insurance policy it had sold to the Doe law firm provided coverage to that firm under the facts of the potential claim by Davison. After the declaratory judgment action was filed, Davison communicated with the Doe law firm and offered to settle his claim against the firm for approximately $74,000, the sum that would have been his net proceeds based on the jury verdict.
On August 1, 1994, the Doe law firm advised Mt. Airy of Davison's settlement offer, expressed its consent to the settlement, and made a demand upon Mt. Airy to pay the portion of the settlement above the policy's $5,000 deductible. The Doe law firm further informed Mt. Airy that Davison had told the firm that if his settlement offer was not accepted by August 3, then he would file a malpractice action against the Doe law firm. The Doe law firm advised Mt. Airy that such an action could result in a judgment larger than the settlement offer and stated that it was in the firm's best interest for the offer to be accepted. In response, Mt. Airy sought to obtain the Doe law firm's consent to a written agreement that by paying Davison, Mt. Airy was not waiving any right to seek reimbursement from the firm if Mt. Airy should prevail in the declaratory judgment action regarding policy coverage. The Doe law firm refused to sign Mt. Airy's nonwaiver agreement, but further demanded that Mt. Airy pay the portion of the settlement offer above the firm's $5,000 deductible.
On August 8, 1994, Mt. Airy again requested the Doe law firm to sign the nonwaiver agreement, but the firm refused. Mt. Airy informed the Doe law firm that it would fund the settlement with Davison, but that it intended to seek reimbursement from the firm. Thus, even though the Doe law firm would not sign the nonwaiver agreement with Mt. Airy, Mt. Airy paid $68,907.79 to fund the settlement with Davison. On the same day, Mt. Airy amended its complaint in the declaratory judgment action to seek a declaration that it was entitled to reimbursement from the Doe law firm for the money it provided to the firm to settle Davison's claim.
On August 18, 1994, the Doe law firm moved to dismiss Mr. Airy's action requesting reimbursement from the firm. The federal district court converted that motion into a motion for a summary judgment. On November 18, 1994, United States District Judge Robert B. Propst certified the following two questions to this Court, pursuant to Rule 18, Ala.R.App.P.
 "1. Did the actions of Mt. Airy in funding the settlement amount to a 'voluntary' payment such that Mt. Airy is not entitled to reimbursement or was the payment by Mt. Airy an 'involuntary' payment which it may be entitled to recover?
 "2. Does the policy language of [the] Mt. Airy policy at IV on page 3 limit the type of reimbursement which the plaintiff may seek, or does it merely provide for additional relief to that provided by law?"
 II.
The federal district court's memorandum accompanying the questions and the briefs submitted to this Court by Mt. Airy and the Doe law firm all focus on two separate lines of cases regarding the first certified question. The federal district court noted that one line of cases, such as Weaver v. AmericanNat'l Bank, 452 So.2d 469 (Ala. 1984), and Clifton v. Curry,30 Ala. App. 584, 10 So.2d 51 (1942), hold that if a party voluntarily makes a payment of money, the party may not seek restitution. Under those cases, restitution is available only where the payment is regarded as involuntary because of fraud, duress, or extortion. The court stated that those cases seem to presuppose that all payments are voluntary unless proven otherwise. However, the court noted that a second line of cases, including Allstate Ins. Co. v. Amerisure Ins. Cos.,603 So.2d 961 (Ala. 1992), and McGuire v. Wilson, 372 So.2d 1297
(Ala. 1979), seem to imply that when coverage under a policy is in dispute, there may be a means by which an insurer may resolve a claim and then later recover an earlier payment *Page 537 
based on the assumption of a nonvolunteer status.
Mt. Airy argues that Amerisure and McGuire control the answer to Judge Propst's first question. It argues that under the authority of those cases, there is a presumption that payment of a disputed claim by an insurer is not a voluntary payment. Mt. Airy further contends that because it clearly informed the Doe law firm it would seek reimbursement of the amount it paid on the claim, should it prevail in the coverage dispute, its payment was not voluntary and its right to obtain reimbursement was preserved. Finally, Mt. Airy claims that under Alabama law it had an affirmative duty to respond to Davison's reasonable settlement offer or else be faced with a potential action by the Doe law firm alleging bad faith. Thus, Mt. Airy contends that public policy, which encourages settlements rather than litigation, and the possibility of a bad faith action by the Doe law firm created a sufficiently compelling business interest that made its payment to the Doe law firm involuntary.
In response, the Doe law firm argues that the opinions relied upon as authority by Mt. Airy are factually distinguishable from this case, because those opinions involve the doctrine of subrogation, where, says the Doe law firm, an insurer seeks reimbursement from a third party, rather than the insured, for money the insurer paid to its insured. The Doe law firm contends that Weaver, Curry, and other cases regarding the law of voluntary and involuntary payments control the answer to Judge Propst's first question. Finally, the Doe law firm argues that the facts of this case do not support Mt. Airy's claim that a business compulsion or duress made its payment to the firm an involuntary one.
 III.
After thoroughly reviewing the two lines of cases cited by the parties, we conclude that those cases relied on by the Doe law firm are controlling under the facts of this case. The Alabama cases relied upon by Mt. Airy focus on the doctrine of subrogation.[1] Under that doctrine, when an insured has been paid insurance policy benefits by his or her insurer for an injury caused by a third party, once the insured has been fully compensated for the injury, the insurer succeeds to the rights of the insured in order to be reimbursed by the third party for the sum it has already paid the insured. See Powell v. BlueCross Blue Shield of Alabama, 581 So.2d 772 (Ala. 1990);International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163
(Ala. 1989); Couch on Insurance 2d § 61.1 (1983). One of the primary purposes of subrogation is to prevent an insured from recovering twice for a single injury. Powell, supra; Liao, supra.
The money Mt. Airy paid to the Doe law firm was not paid to compensate the firm for an injury caused by a third party; the policy benefits were paid to the Doe law firm to settle a third party's claim against the firm. Thus, it is clear that the doctrine of subrogation is not applicable and that the first certified question must be decided based on a determination of whether Mt. Airy's payment to the Doe law firm was "voluntary" or "involuntary."
It has been the law in Alabama for over 150 years that where one party, with full knowledge of all the facts, voluntarily pays money to satisfy the colorable legal demand of another, no action will lie to recover such a voluntary payment, in the absence of fraud, duress, or extortion. Weaver, supra; H.A.Edwards Ins. Agency v. Jones, 242 Ala. 624, 7 So.2d 567 (1942);National Bank of Boaz v. Marshall County, 229 Ala. 369, *Page 538 157 So. 444 (1934); Town Council of Cahaba v. Burnett,34 Ala. 400 (1859); Jones v. Watkins, 1 Stew. 81 (Ala. 1827);Clifton, supra; Thornton v. Singer Sewing Mach. Co.,34 Ala. App. 162, 37 So.2d 239 (1948). A "voluntary payment" has been defined as "a payment made by a person of his own motion, without compulsion; a payment made without a mistake of fact or fraud, duress, coercion, or extortion, on a demand which is not enforceable against the payor." 70 C.J.S. Payment § 100 (1987).
 A.
We note that Mt. Airy first argues that its payment to the Doe law firm was not "voluntary," because before it made the payment to the Doe law firm it gave notice to the firm that it disputed the claim and would file a legal action to recover the payment. However, this Court has previously ruled that "the mere fact that [the payment] was paid under protest will not render it involuntary." National Bank of Boaz, 229 Ala. at 370,157 So. at 446. See Thornton, supra; Clifton, supra; 70 C.J.S.Payment § 111 (1987); 66 Am.Jur.2d Restitution and ImpliedContracts §§ 93, 95, and 112 (1973).
Even the California case of Johansen v. California StateAutomobile Ass'n Inter-Insurance Bureau, 15 Cal.3d 9,123 Cal.Rptr. 288, 538 P.2d 744 (1975), relied on by Mt. Airy, and that case's progeny, require that in order for an insurer to preserve a right to be reimbursed by its insured for the money it pays to settle a claim against the insured, the insurer must first obtain either a written agreement with its insured that it does not waive such a right by making the payment, or obtain a court order granting the insurer the authority to participate in the settlement without waiving any right to reimbursement. See Val's Painting Drywall, Inc. v. Allstate Ins. Co.,53 Cal.App.3d 576, 126 Cal.Rptr. 267 (1975); Maryland Cos. Co.v. Imperial Contracting Co., 212 Cal.App.3d 712,260 Cal.Rptr. 797 (1989). Mt. Airy attempted to get the Doe law firm to sign such a nonwaiver agreement, but the firm would not do so. Although Mt. Airy's payment to the Doe law firm was made with notice that it would seek to recover the money from the firm, we conclude that such a protest by itself was insufficient to make the payment "involuntary."
 B.
Mt. Airy also argues that its payment was not voluntary, because, it says, it was compelled to make the payment by significant business interests. In sum, Mt. Airy argues that the threat of a "bad faith" lawsuit against it by the Doe law firm, based on a failure to settle a claim against its insured within policy limits, constituted sufficient duress to make its payment of the sum needed to settle Davison's claim "involuntary." We cannot agree. Alabama law recognizes that the mere threat of legal proceedings is insufficient to constitute the duress needed to make the payment of money involuntary.National Bank of Boaz, supra; Southern Ry. v. City of Florence,141 Ala. 493, 37 So. 844 (1904); Clifton, supra. Over a century ago, this Court aptly reasoned.
 "If the influence of the mere apprehension of judicial proceedings is legal compulsion — if, when a party having the alternative to pay or submit to a judicial investigation, elects the former, he can be said to act under duress, [___] then the distrust of the adequacy of the courts to protect and maintain the rights is justified, and it is acknowledged that the perils of justice and right in the judicial tribunals are so great as to deprive one of his free volition, and shield him from responsibility. The law does not recognize its amenability to such a reproach. In consequence of the imperfection incident to all that is human, wrong may sometimes prevail in the purest and wisest judicial tribunals; yet, in theory, there is in our law a security for every right, and a redress for every wrong; and the practical operation of the law corresponds, in the main, with its profession. No one can be heard to say, that he had the right and the law with him, but he feared his adversary would carry him into court, and that he would be unlawfully fined and imprisoned; that being thereby deprived of his free will, he yielded to the wrong, and the courts must assist him to a reclamation." *Page 539 
Town Council of Cahaba v. Burnett, 34 Ala. 400, 404 (1859) (emphasis added). We also agree with the following:
 "If there is in fact a cause of action when the threat is made, the plaintiff, by bringing suit, would only enforce a legal right; if there was no cause of action or [there was a] demand for more than is due, the party threatened should exercise the ordinary degree of firmness which the law presumes every man to possess, and meet the issue of the unjust suit."
66 Am.Jur.2d Restitution and Implied Contracts § 109 (1973).
 IV.
In conclusion, we hold that Mt. Airy's payment to the Doe law firm, its insured, was voluntary, and that Mt. Airy, therefore, is not entitled to seek reimbursement. Given that answer to the first certified question, the second question is moot. Thus, we decline to answer the second question.
QUESTION ANSWERED.
MADDOX, ALMON, SHORES, and INGRAM, JJ., concur.
[1] Allstate Ins. Co. v. Amerisure Ins. Cos., 603 So.2d 961, 962
(Ala. 1992) (involving a claim by Amerisure that it should recover from Allstate the money it had paid to settle a third party's claim against an insured, when at the time Amerisure paid the claim it was disputed as to which of the two insurers owed the primary coverage; Amerisure phrased its claim against Allstate as one for indemnity or equitable subrogation);McGuire v. Wilson, 372 So.2d 1297 (Ala. 1979) (involving a claim by a homebuilder and its insurer, seeking from the purchaser of a home reimbursement of money spent to repair the home after a fire damaged it while the purchaser was residing there under a lease provision in the real estate sales contract; this Court recognized the insurer's claim against the purchaser as one forsubrogation).