[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 453 
Jeffrey Stone and Susan Stone sued individually and on behalf of a class, seeking to recover a $15 fee paid to Mellon Mortgage Company ("Mellon") for facsimile transmissions of payoff statements ("fax fees") incurred in connection with refinancing their mortgage loan before its maturity. The Stones sought a recovery based on theories of breach of contract, money had and received, and unjust enrichment. Their complaint alleged that Mellon had wrongfully charged a fax fee to its customers and had wrongfully incorporated it into the amount necessary to discharge the loan; they alleged that this charge violated the terms of their note to Mellon. The trial court entered a summary judgment in favor of Mellon, and the Stones appealed.
 I. Facts
Mellon is a mortgage banking company that services mortgage loans. It held a mortgage given by the Stones to secure a loan by which the Stones had financed the purchase of their home. The loan and mortgage provided for an adjustable rate *Page 454 
of interest. The Stones' note and mortgage had been assigned to Mellon in 1992.
In 1993, the Stones began investigating the possibility of refinancing their debt to move from the adjustable-rate mortgage to a fixed-rate mortgage. Paragraph 21 of the Stones' mortgage explained the procedure necessary for a "release":
 "Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs."
The Stones' note states that the borrower "may make full payment or partial prepayment without paying any prepayment charge."
In order to facilitate their refinancing, the Stones contacted Lawhorn Associates ("Lawhorn"), a Huntsville mortgage-brokerage firm owned by Calvin Lawhorn. On October 21, 1993, the Stones hired Lawhorn to secure for them a fixed-rate loan. As part of this process, the Stones signed a "General Authorization," which provided:
 "I hereby authorize Lawhorn Associates, Inc., to verify my past and present employment, earning records, bank accounts, stock holdings and any other asset balances needed to process my mortgage loan application."
On October 22, 1993, the day after the Stones had engaged its services, Lawhorn contacted Mellon to request "payoff" information on the Stones' adjustable-rate mortgage. Mellon contends that as part of what it calls its "scripted" response to this request, it informed Lawhorn that the Stones' payoff information could not be disclosed orally, but could be sent by United States mail free of charge or by facsimile transmission for a fee of $15. It is undisputed that Lawhorn chose to have the payoff statement sent by fax and voluntarily incurred the fax fee. However, there is a dispute between the parties as to whether Lawhorn ever discussed the fax fee with the Stones.
In response to the request made by Lawhorn, Mellon faxed a two-page "payoff statement" to Lawhorn on October 25, 1993. The payoff statement read:
"DEAR BORROWER (TITLE COMPANY)
 THE TOTAL UNPAID PRINCIPAL BALANCE ON YOUR (THIS) LOAN AS OF 10/22/93 IS: $50006.53
INTEREST TO 10/22/93, AT 6.00000 172.63
ACCRUED LATE CHARGES 0.00
MIP/PMI PREMIUM TO 00/00/00 0.00
ESCROW/IMPOUND ADVANCE 0.00
PREPAYMENT PENALTY 0.00
STATEMENT FEE 0.00
FAX FEE 15.00
0.00
******TOTAL TO PAY LOAN IN FULL****** $50194.16"
Lawhorn subsequently secured for the Stones a fixed-rate mortgage with Secure America mortgage company and forwarded the payoff statement to Secure America's closing attorney, George Williams, so that he could prepare the documents necessary for closing. Williams prepared a "Settlement Statement" containing a line item described as "Payoff 1st Mortgage; Mellon Mortgage" — the statement did not detail the underlying items making up the total payoff amount. This payoff amount included the $15 fax fee, but the Stones testified that when they attended and participated in the closing of the new loan arrangement — on November 24, 1993, approximately four weeks after they had had their initial contact with Lawhorn — they did not know the fax fee had been included in the payoff amount. The Stones commenced this action nearly three years after that closing. *Page 455 
 II. Standard of Review
When reviewing the disposition of a motion for summary judgement, this Court applies the same standard the trial court applies "in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). "Substantial evidence" is defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders LifeAssur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 III. The Stones' Breach-of-Contract Claim
The Stones alleged a breach of contract in the first count of their complaint. First, the Stones allege that when they executed the note, they agreed to pay principal, interest, a loan charge, and the costs and expenses associated with collection should they default on their note, and they argue that the parties did not contemplate fax fees when they entered into the loan contract and that for Mellon to charge a fax fee violates the terms of the note.
We are persuaded by the rationale set forth in Cappellini v.Mellon Mortgage Co., 991 F. Supp. 31 (D.Mass. 1997), where the court rejected this same argument:
 "It would be difficult for form notes and mortgages that cover long time periods to anticipate and include each and every such incidental special request made by a borrower. Here the plaintiff was asking for faxed payoff statements in order to receive refinancing and take advantage of lower interest rates. To say that a borrower can make such requests for his or her own benefit, yet, under a principle such as contra proferentum, never allow the mortgage servicer to charge for the services unless they are specified in the loan documents would be an unreasonable interpretation of the contracts.
 "Mellon provides certain basic services to the borrower free of charge, including up to four payoff statements a year, sent by U.S. mail. Because the plaintiff could have discharged the mortgage through the use of this free service, but for convenience chose to have payoff statements faxed, it is not forbidden by the language of the Note and Mortgage to charge a fee for the extra services."
Id. at 39-40. We conclude that Mellon did not violate the terms of the note by charging the Stones the fax fee.
The Stones next contend that Mellon's including the fax fee in the amount given in the payoff statement violated the terms of the mortgage because, according to the Stones, the effect of the term "TOTAL TO PAY LOAN IN FULL," used in reference to a figure that included the fax fee, was to condition the release of themortgage on the Stones' paying the fax fee in addition to those expenses specified by the mortgage. Paragraph 21 of the mortgage, entitled "Release," states:
 "Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs."
This language states that the mortgage will be released upon payment of the secured sums (principal and interest) and any recordation fees. Indeed, if Mellon had in fact withheld the release of the Stones' mortgage until they paid the fax fee, Mellon's policy would have violated the terms of the mortgage.
We find no breach of contract in the simple imposition of a fax fee. As we discuss later in connection with the Stones' claims based on the theories of unjust enrichment and money had and received, *Page 456 
the Stones' agent incurred the fax fee for expedited services and charging the Stones for it did not breach the terms of the mortgage. See Cappellini v. Mellon Mortgage Co., supra. In addition, the payoff statement purports to state a sum that would be the "Total To Pay Loan in Full," rather than the "Total To Pay Loan in Full and Discharge Security Instrument."
We conclude that the record before us does not suggest a breach of the terms of the mortgage. We agree with what the Washington Court of Appeals wrote in Cain v. Source One MortgageServices Corp., 97 Wn. App. 1014 (1999) (notation of unpublished opinion).[1] On similar facts, that court held that charging the fax fee and listing it on the payoff statement did not breach the terms of the contract. That court also declined to address the question whether the payoff statement gave the misleading impression that the mortgage would not be released unless the fee was paid, because, that court held, the plaintiffs' fraud claims were barred by the running of the limitations period. Id. We, likewise, decline to address that question, because the Stones did not allege fraud as a theory of recovery and, if they had alleged fraud, their fraud claim would have been barred by the statute of limitations; this action was filed nearly three years after the closing on the refinancing loan.
The trial court properly entered the summary judgment in favor of Mellon on the breach-of-contract claim.
 IV. The Stones' Money-Had-and-Received Claim and Their Unjust-Enrichment Claim A. The Defense of Voluntary Payment
Having determined that Mellon did not breach the contract, we turn to the Stones' other claims, claims based on the theory of money had and received and the theory of unjust enrichment. Mellon contends that the Stones voluntarily paid the fax fee and therefore cannot recover under either theory. We agree.
This Court has long recognized the defense of voluntary payment:
 "It has been the law in Alabama for over 150 years that where one party, with full knowledge of all the facts, voluntarily pays money to satisfy the colorable legal demand of another, no action will lie to recover such a voluntary payment, in the absence of fraud, duress, or extortion."
Mt. Airy Ins. Co. v. Doe Law Firm, 668 So.2d 534, 537 (Ala. 1995). Claims based on theories of breach of contract, unjust enrichment, and money had and received are precluded by proof that the plaintiff voluntarily paid what he or she is seeking to recover. Id.
 B. Imputed Knowledge
The Stones argue that the evidence is conflicting on the question whether Lawhorn ever informed them of the fax fee, and they then argue that this conflict creates a genuine issue of material fact and that this issue of fact barred the entry of a summary judgment based on the defense of voluntary payment. The Stones rely on the limited scope of the agency relationship created by the "General Authorization" they gave Lawhorn. The Stones assert that the authority they gave Lawhorn was not broad enough to allow Lawhorn to incur a fax fee on their behalf. *Page 457 
Mellon contends that the General Authorization is not the exclusive source of Lawhorn's authority and that Lawhorn had the authority to act on behalf of the Stones in incurring the fee.
When the Stones hired Lawhorn to assist them in securing refinancing, they, according to Mrs. Stone, authorized Lawhorn to "take care of all the details" related to the refinancing. One part of this process required Lawhorn to obtain payoff information on the Stones' existing loans or debts in order to obtain a record reflecting the Stones' financial status. Some form of written authorization was necessary for Lawhorn to obtain information from third parties concerning the Stones.
The purpose for which Lawhorn was retained (to obtain fixed-rate financing), required more than simply collecting information about the Stones. Under the undisputed evidence, Lawhorn had the implied authority to engage in activities in furtherance of the purpose of obtaining a fixed-rate mortgage.
 "`Implied authority of an agent is authority to do whatever acts or use whatever means are reasonably necessary and proper to the accomplishment of the purposes for which the agency was created, so that in the conduct of his principal's business, an agent has implied authority to do that which the nature of the business would demand in its due and regular course.'"
Merrell v. Joe Bullard Oldsmobile, Inc., 529 So.2d 943, 947 (Ala. 1988) (trial court's instruction to the jury, approved as an "accurate statement of the applicable law," 529 So.2d at 948).
An agent's knowledge can bind the principal if the agent acquired the knowledge while acting within the line and scope of his authority and the knowledge relates to the very matter coming within his authority. Sullivan v. Alabama Power Co., 246 Ala. 262,20 So.2d 224 (1944); see, also, Tennessee Valley Bank v.Williams, 246 Ala. 563, 566, 21 So.2d 686, 689 (1945). Given Lawhorn's implied authority, we conclude that Lawhorn's knowledge is the Stones' knowledge. Therefore, it was within Lawhorn's implied authority to incur the fax fee on behalf of the Stones. While the evidence is in conflict as to whether Lawhorn had ever specifically informed the Stones that it had incurred the $15 fax fee, that conflict does not create a "genuine issue of material fact," given our holding that Lawhorn's knowledge was imputed to them.
Lawhorn, acting as the Stones' agent, received the payoff statement and, acting on behalf of the Stones, placed it in the hands of the closing attorney, thereby setting in motion the final steps necessary to cause the fax fee to be included in the amount paid to Mellon to pay off the note. We conclude that Lawhorn's actions, which we hold were attributable to the Stones, constitute a payment of the fax fee by the Stones.
 C. Duress and Mistake of Fact
The Stones argue that the voluntary-payment defense is inapplicable in this case because, they say, the payment was made not voluntarily but under duress and under a mistake of fact. Mt.Airy Ins. Co., 668 So.2d at 538. Although evidence of duress or mistake can limit the application of the voluntary-payment doctrine, we find no such evidence in this case. First, Lawhorn, acting as the Stones' agent, requested the faxed information over a month before the closing. For all that appears, the Stones had a reasonable alternative; they could have gotten the payoff statement by mail, free of charge. But, even if the urgency of the situation had required the use of facsimile transmission rather than the regular mail service — and the record does not suggest it did — the Stones' failure to challenge the payment until nearly three years after the duress had been lifted, destroys any reasonable factual basis for a finding of duress. "A contract made under duress will be deemed ratified if the aggrieved party fails to repudiate the agreement within a *Page 458 
reasonable time after the duress has dissipated." Keshishian v.CMC Radiologists, 142 N.H. 168, 173, 698 A.2d 1228, 1232 (1997). A nearly three-year delay, under these facts, falls well beyond the outer limit of a reasonable time, as a matter of law.
The Stones argue that the payment was not voluntary, because, they say, it was made under a mistake of fact. The mistake, they say, is that they thought payment of the fax fee was necessary for a release of the mortgage. The Stones argue that because they, ostensibly through knowledge of their agent, Lawhorn, believed that payment of the fax fee was necessary for a release of the mortgage, the payment was made under a mistake of fact; that mistake of fact, they argue, precludes application of the voluntary-payment doctrine. See Mt. Airy Ins. Co., 668 So.2d at 538.
Mellon's fax fee is separately listed on the payoff statement, distinct from the loan principal and the accrued interest. See Colangelo v. Norwest Mortgage, Inc., 598 N.W.2d 14
(Minn.App. 1999). The fact that Lawhorn, as the Stones' agent, may have read more into the phrasing of the statement than that phrasing logically and fairly suggests — and we cannot know that Lawhorn did that — would not provide a factual basis for a finding that the fee was paid because of a mistake of fact. Likewise, the testimony of Mellon's representative as to what Mellon would have done if the Stones had inquired whether the fax fee was a condition for release of the mortgage, does not create a genuine issue of material fact. At most, Lawhorn made a mistake of law, a mistake that would be imputed to the Stones.
If a party with full knowledge of the facts wrongly interprets them, so that he misperceives their legal significance, that wrong interpretation does not constitute a mistake of fact. The Stones' misperception of the legal significance or effect of Mellon's including the fax fee in the total shown on the payoff statement constitutes a mistake of law rather than a mistake of fact, and a mistake of law does not preclude the application of the voluntary-payment doctrine.
 "It is well settled that money voluntarily paid under a mistake of fact may be recovered, see, e.g., Citizens' Bank of Fayette v. [J.] Blach Sons, Inc., 228 Ala. 246, 153 So. 404 (1934); Jones v. Watkins, 1 Stew. 81 (Ala. 1827), even where the party paying had means of ascertaining the real facts, Hinds v. Wiles, 12 Ala. App. 596, 68 So. 556 [(1915)]. However, it is equally well settled that money voluntarily paid with full knowledge of the facts but by reason of mistake of law cannot be recovered. See Rice v. Tuscaloosa County, 242 Ala. 62, 4 So.2d 497 (1941). . . ."
Sherrill v. Frank Morris Pontiac-Buick-GMC, Inc., 366 So.2d 251,257 (Ala. 1978) (Torbert, C.J., concurring specially); see, also,Hinson v. Byrd, 259 Ala. 459, 66 So.2d 736 (1953) (where three people participating in transaction had full knowledge of the facts and of their existing legal rights, but were operating under a misconception of the legal meaning and effect of an instrument they had executed, the mistake was one of law).
The rule by which the law denies one a recovery for a voluntary payment is subject to an exception where the payment has been procured by a fraud. Mt. Airy Ins. Co., 668 So.2d at 537. However, in their complaint the Stones did not allege a misrepresentation by Mellon, and in their brief on appeal they make no argument that would support a finding of fraud on the part of Mellon. We are unwilling to characterize Mellon's conduct as fraud and thereby save the Stones from the effect of their voluntary payment made under a possible mistake of law.
Because the Stones did not object to the fax fee once their loan transaction had closed and their alleged duress had been lifted, and because they have shown no mistake of fact, the voluntary-payment *Page 459 
doctrine defeats their claims based on theories of unjust enrichment and money had and received.
 V. Conclusion
The summary judgment is affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, See, Brown, and England, JJ., concur.
[1] Although Cain is not published in either WashingtonAppellate Reports or Pacific Reporter, it appears on the Westlaw and LEXIS databases. As an unpublished opinion, Cain carries no precedential value in the State of Washington. See Wash. Rev. Code § 2.06.040 (1998). Although the Alabama appellate courts publish all opinions, Alabama has a similar rule regarding unpublished orders and judgments. See Rule 53(d), Ala.R.App.P.Cain's unpublished status, however, does not preclude us from using it in our analysis. No opinion from another state court is binding on the courts of Alabama, but we often cite such an opinion as persuasive authority. We cite Cain because it is a well-reasoned opinion that addresses the precise issue before us.