Smart Professional Photocopy Corporation d/b/a Smart Corporation (hereinafter "Smart") appeals from a class-certification order obtained by Deborah Childers-Sims and Harriet Lowe, former customers of Smart (hereinafter referred to collectively as "the customers"). We vacate the class-certification order and remand.
 I. Factual Background and Procedural History
Smart is in the business of providing copying and related services to health-care businesses, including medical-care providers and businesses that provide nonmedical services to those providers. A medical provider will typically forward to Smart a letter the provider has received from a patient or a patient's attorney requesting copies of medical records and/or billing records. Smart retrieves the requested records and forwards the copies, along with its invoice, to the patient or the patient's attorney requesting the records.[1]
On October 9, 2001, the trial court certified two classes of Alabama residents with claims against Smart. The representatives of each respective class, Childers-Sims and Lowe, claim that Smart charged, and they mistakenly paid, amounts in excess of the "reasonable costs" of reproducing *Page 1247 
medical records pursuant to § 12-21-6.1, Ala. Code 1975.[2] The customers allege unjust enrichment, money paid by mistake, and money had and received. They seek refunds and other equitable relief.
Smart provides a procedural manual to its employees. That manual directs its employees to charge a fee for shipping and handling equal to 18% of the copying charges, unless management instructs otherwise. Smart contends that its employees have been instructed to charge, in addition to the search fees and copying charges, only actual postage for copies mailed to this State.[3] Smart says that whenever an employee mistakenly charges the 18% fee to someone requesting copies in Alabama, its policy is to adjust the invoice to charge only actual postage fees.
Although the transactions involve separate matters, the claims of Childers-Sims and Lowe are factually similar. Both transactions began in March 1997 and both involve requests for records made through retained counsel. Retained counsel was to pay Smart directly for the requested copies. Both Childers-Sims and Lowe were then required, pursuant to an employment agreement with retained counsel, to reimburse counsel for the expenses charged by Smart.
The differences between the claims of the customers, and thus the need for two classes, involve the type of records requested and received by each customer and the amount Smart charged each customer for its services. Childers-Sims requested and received, through her counsel, copies of her medical records[4] and an itemized statement from her medical provider pertaining to her medical treatment. Smart sent invoices reflecting the postage and handling charges to Childers-Sims's attorney.[5] Her attorney paid the invoices in the ordinary course of business without objection.
Lowe, on the other hand, requested, through counsel, only a copy of her billing record.[6] Smart sent the billing record along with its invoice to Lowe's attorney. The invoice reflected a flat fee of $15 for the reproduction of one billing record. Lowe's attorney paid the invoice in the *Page 1248 
ordinary course of business with no objection.
After extensive and contested discovery, including the production of over 60,000 invoices, the customers submitted evidence that the 18% fee was charged on over 100 invoices and that over 300 invoices reflected overcharges on a per-page basis and/or search-fee basis. A class-certification hearing was held on October 1, 2001. No witnesses testified at the certification hearing. Based upon the parties' briefs and the arguments at the hearing, the trial court entered an order certifying the two classes on October 9, 2001. The trial court, in its class-certification order, stated:
 "There are common questions of law and fact to each class. Each member of the respective classes, either directly or by authorized agent, requested copies of medical records (to include billing), which request was filled by Smart, who, on or after April 25, 1994, charged each class member in excess of the reasonable charges set forth in Ala. Code § 12-21-6.1.
". . . .
 "The Court further finds that the common questions of law and fact common to each class predominate over any questions affecting only individual members:
 "(a) as to the 18% flat rate charge for shipping and handling rather than the actual costs of mailing, the issue of liability is common to all class members. Either Smart is liable to each member of the class, or it is liable to none. This is a `common thread' which pervades each class member's claim[;]
 "(b) the same is true for those overcharged for the per page charge or research/retrieval restrictions set forth in the statute. Either Smart is liable to each member of the class, or it is liable to none."
Childers-Sims seeks to represent a subclass of Alabama residents who were charged in excess of the actual cost of copying and mailing the records; Lowe seeks to represent a second subclass of Alabama residents who were overcharged for the search fee and/or the per-page charge. All claims of the customers are based upon a violation of § 12-21-6.1.
Smart appeals pursuant to § 6-5-642, Ala. Code 1975, authorizing an immediate appeal of a class-certification order. Smart argues that the class-certification order is invalid because, it says, the trial court failed to conduct the rigorous analysis required for class certification and the customers failed to establish the criteria of Rule 23, Ala.R.Civ.P. Smart further argues that the customers' transactions are outside the scope of § 12-21-6.1, and that, even if they are not outside the scope of § 12-21-6.1, the customers' claims are barred by the "voluntary-payment" doctrine.[7] Finally, Smart argues that the trial court's construction of § 12-21-6.1 renders it unconstitutional as applied to Smart.
 II. Standard of Review
This Court applies an abuse-of-discretion standard of review to a trial court's class-certification order, but we will review de novo the question whether the trial court applied the correct legal standard in reaching its decision to certify a class. Compass Bank v. Snow,823 So.2d 667 (Ala. 2001). *Page 1249 
If the customers fail to meet the evidentiary burden as required by Rule 23, then the order certifying the two classes constitutes an abuse of discretion by the trial court. Compass Bank, 823 So.2d at 672. The customers must establish all of the criteria set forth in Rule 23(a), Ala.R.Civ.P., and one of the criteria set forth in Rule 23(b). Ex parteGold Kist, Inc., 646 So.2d 1339, 1341 (Ala. 1994). Rule 23(a) provides:
 "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
The one additional Rule 23(b) criteria relied upon in the class- certification order states that the customers must prove that common questions of law or fact predominate over individual matters and that the class action is superior to other available methods of litigating the claim. We must determine, therefore, whether the trial court abused its discretion in certifying the classes and whether it applied the correct legal standard in reaching its decision.
 III. Smart's Defenses to Class Certification
Smart argues that certification of the two classes is improper for several reasons. Because we conclude that the proof essential to support the customers' claims of unjust enrichment, money had and received, and money paid by mistake defeats the predominance and superiority requirements of Rule 23(b)(3), we pretermit a discussion of the other issues raised by Smart.
 IV. Satisfaction of Rule 23(b)(3) Criteria
Initially we note that "[i]n order to obtain class certification, the plaintiff[s] must establish all of the criteria set forth in Rule 23(a) and one of the criteria set forth in Rule 23(b)." Ex parte Gold Kist, 646 So.2d at 1341. Because we find that the predominance and superiority requirements of Rule 23(b)(3) are lacking, we foreclose any discussion of Rule 23(a).
 A. Predominance
The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." AmchemProds., Inc. v. Windsor, 521 U.S. 591, 623 (1997). To determine whether common issues of law or fact predominate, the trial court here must examine the customers' causes of action, considering "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." Rutstein v. Avis Rent-A-Car Sys., Inc.,211 F.3d 1228, 1234 (11th Cir. 2000).[8]
Therefore, in order to meet the predominance requirement, the customers here have the burden of presenting sufficient proof that common questions of law or fact predominate over individual claims. § 6-5-641. We have held that the necessity of individualized testimony from each class member to prove an essential element of the cause of action defeats class certification. Reynolds Metals Co. v. Hill, 825 So.2d 100 (Ala. 2002);Compass Bank v. Snow. *Page 1250 
The customers argue that Smart violated § 12-21-6.1 by overcharging for mailing costs and the search fees for providing the customers with medical and billing records. In their brief to this Court, the customers assert that their "theories of recovery for the overcharge are simplistic[:] unjust enrichment, money had and received, and money paid by mistake." The customers contend that the three theories upon which they seek recovery are all essentially based upon the fact that their counsel paid Smart's invoices by mistake and that they were unaware of all the necessary facts when the payments were made.
The issue whether a payment made by mistake can, as a matter of law, under proper facts, allow recovery under the customers' equitable claims is a common question of law suitable for class action. This question of law can be answered one time for all members of the class, thus satisfying the Rule 23(b)(3) predominance requirement. However, the issue whether any class member in fact paid Smart by mistake, as the customers contended, presents individual questions of fact. The customers state that the essence of their claims involves proof that Smart "holds money which, in equity and in good conscience, belongs to [the customers] orholds money which was improperly paid to [Smart] because of mistake orfraud." Hancock-Hazlett Gen. Constr. Co. v. Trane Co., 499 So.2d 1385,1387 (Ala. 1986) (final emphasis added).[9]
This case involves money paid to Smart giving rise to the customers' theories of improper payment. The customers acknowledge that the proof necessary for a recovery, assuming as we must at this stage of the proceeding that the customers correctly read the statute, requires a showing of payment by mistake. The customers state that they "have contended from their initial filing, that payment was made by mistake and contend that they were not in possession of all of the facts necessary for determining how much to pay [Smart] for [its] copying and postage services." Brief of Customers, p. 22. The customers have the burden of proof as to the evidence of payment under mistake of fact, causing them to pay an amount in excess of what they in fact owed. See Wise, Boles Bowdoin v. Fuller, 11 Ala. App. 427, 433, 66 So.2d 827, 829 (1914).
In Compass Bank v. Snow, supra, the plaintiffs sought to certify a class of customers harmed by Compass Bank's alleged failure to disclose its posting order and the effect that the posting order had on the fees charged for insufficient funds. The plaintiffs alleged fraudulent suppression and breach of contract. Pursuant to Rule 23(b)(3), Compass Bank argued that numerous individual issues predominated over common questions of law or fact, thus making the class unmanageable. We agreed with Compass Bank, and we stated:
 "[I]ndividual inquiry will be required to determine at the very least what information, if any, each plaintiff customer received about the posting order, the extent to which each plaintiff customer relied on the Compass defendants' alleged failure to disclose its policies, and whether and to what extent each plaintiff customer was harmed by the alleged failure to disclose. . . .
 ". . . Thus, for thousands of customers, the trial court would have to inquire how they learned, if indeed they did learn, about the posting order used by the Compass defendants; whether they received a written disclosure and, if so, whether they read it; whether they spoke with a bank representative and, if *Page 1251 
so, with whom they spoke and the substance of the conversation; whether they were able to determine the posting order used by examining their own bank statements, and, if so, what information and calculations they used to make such a determination."
823 So.2d at 674 (relying upon Shelley v. Amsouth Bank, (No. CIV.A.97-1170-RV-C, July 24, 2000) (S.D.Ala.) (unpublished order), aff'd, 247 F.3d 250 (11th Cir. 2001) (table)).
In the present case, Smart has demonstrated that individualized evidence is required to determine whether each class member operated under a mistake of fact. Each class member had a copy of an invoice prepared by Smart, the actual copies of medical records, and the envelope showing the postage paid. Some members may have reviewed their invoices to determine whether the shipping and handling charge was excessive or whether the per-page charges were improper. Others may have analyzed whether Smart charged more for medical records or for billing records. We note that the customers' billings were received and paid in the first instance by the customers' legal counsel, thus making an additional line of inquiry as to the customers' knowledge of factual and legal matters in connection with the customers' claims. A trier of fact would have to determine whether each individual member of the class paid an invoice from Smart by mistake.
Similar to the extensive inquiry required in Compass Bank, the necessity of conducting such a detailed inquiry into more than 60,000 transactions among numerous class members renders the requirement of predominance impossible. We cannot assume that each class member paid the invoices based upon a mistake of fact. See Ex parte Green Tree Fin.Corp., 723 So.2d 6 (Ala. 1998) (vacating a class-certification order, in part, because of individualized proof of subjective factors).
In Reynolds Metals Co. v. Hill, supra, the plaintiffs sought to certify a class of employees who relied upon a manager's promise of termination benefits. To determine each individual's reliance in the case, we concluded that "extensive individual examination[s]" would be required. 825 So.2d at 108. Those examinations included a review of each individual's mental capacity, background, and sophistication. Id.; see also Ex parte Amsouth Bancorporation, 717 So.2d 357 (Ala. 1998) (reversing a class-certification order where individual claims of fraud would predominate). We held in Reynolds Metals that individual reliance issues precluded class certification in a case involving claims of fraud, breach of contract, and unjust enrichment. Id.
It is clear here, as it was in Reynolds Metals, that individual inquiry will be required to determine what information, if any, each class member relied upon in paying the invoices for Smart's services. The customers have "contended from their initial filing, that payment was made by mistake and contend that they were not in possession of all of the facts necessary for determining how much to pay [Smart] for [its] copying and postage services." Because of the necessity in this case of proving each class member's subjective state of mind, individual issues predominate over the customers' claims. The customers cannot prove that each member paid under the same mistake of fact nor can they determine the extent of each class member's knowledge upon payment of the invoice from Smart. Thus, the customers cannot satisfy their burden of proof as to each member's payment by mistake without individual inquiries. See ReynoldsMetals, 825 So.2d at 105.
We conclude that individual issues of payment by mistake predominate over the *Page 1252 
claims of unjust enrichment, money had and received, and money paid by mistake. The customers failed to meet their burden of sufficient proof of predominance as required by § 6-5-641.
 B. Superiority
Because individual issues predominate over the common claims, manageability difficulties render these claims unfit for class certification. Reynolds Metals, 825 So.2d at 108. The trial court abused its discretion by failing to address the impact of this class-member-specific inquiry. The required inquiry of the subjective factors in each individual transaction in the customers' equitable claims pretermit class-wide resolution of these disputes.
 V. Conclusion
We need not address Smart's arguments dealing with the merits of the claims and defenses because those issues are not before us at this stage of the proceedings. With regard to the issue before us, we conclude that the trial court erred in certifying the two classes in this case. We vacate the class-certification order and remand the cause for further proceedings consistent with this opinion.
ORDER VACATED; CAUSE REMANDED.
Moore, C.J., and Houston, Johnstone, and Stuart, JJ., concur.
Woodall, J., recuses himself.
[1] Smart's procedures are now automated. For purposes of the transactions at issue here, the procedure discussed above applies.
[2] The statute provides that "any person required to release copies of medical records may condition the release upon payment by the requesting party of the reasonable costs of reproducing the medical records." The statute further provides that the reasonable costs for the reproduction of reports "shall not be more than one dollar ($1) for each page of the first 25 pages, not more that 50 cents ($.50) for each page in excess of 25 pages, and a search fee of five dollars ($5)." § 12-21-6.1(b)(1) and (2).
[3] We cannot determine from the record Smart's state of incorporation. Smart's principal place of business is Torrence, California. It has employees located in this State who work in Shelby County.
[4] A legal issue exists in this case as to whether the term "medical records" includes both medical records and billing records.
[5] Smart charged on invoice no. M4692833 for 17 pages of medical records, a postage charge of $3.06 (18% of the $17.00 copy charge, calculated at a dollar per page). The $17.00 charge does not include a $5.00 search fee (see note 2).
Smart charged on invoice no. H152084 for four pages of medical records, a postage charge of $1.62 (18% of the $9.00 copy charge, calculated at a dollar per page plus what is referred to on this invoice as a $5.00 "basic" fee).
[6] The specific records Lowe requested are in dispute. In the first request letter, Lowe's attorney requested both medical records and billing records. However, in a second request letter, Lowe's attorney requested only a billing record. Regardless of what documents were requested, it is undisputed that Lowe received only a billing record from Smart.
[7] See Boykin v. Smart Corp., 669 So.2d 939 (Ala.Civ.App. 1995), where a class action alleging excessive charges by Smart was certified, yet the Alabama Court of Civil Appeals affirmed a summary judgment for Smart based on the fact that the invoices were paid without objection.
[8] Because the Alabama Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure, cases construing the federal rules are authoritative in construing Alabama rules. Cutler v. OrkinExterminating Co., 770 So.2d 67, 70 n. 2 (Ala. 2000).
[9] The customers' complaint does not contain a fraud allegation.