893 So.2d 307 (2004)
U-HAUL COMPANY OF ALABAMA, INC., et al.
v.
Andrew McBride JOHNSON.
1021726.
Supreme Court of Alabama.
May 14, 2004.
*308 Tony G. Miller and Lorrie L. Hargrove of Maynard, Cooper & Gale, P.C., Birmingham, for appellants.
Kenneth W. Hooks and Chris T. Hellums of Pittman, Hooks, Dutton, Kirby & Hellums, P.C., Birmingham, for appellee.
LYONS, Justice.
U-Haul Company of Alabama, Inc. ("U-Haul Alabama"); U-Haul International, Inc.; and Jim's Auto Service (hereinafter sometimes collectively referred to as "the U-Haul defendants") appeal from a class-certification order in an action brought by Andrew McBride Johnson, a U-Haul rental customer. We vacate the class-certification order and remand the case for further proceedings.

I. Factual Background and Procedural History
U-Haul International rents various types of vehicles and equipment to customers, not only through its freestanding rental centers, but also through independent dealers who operate other businesses in addition to their U-Haul rental dealerships. Jim's Auto was such an independent dealer in Woodstock. The U-Haul defendants describe Jim's Auto as a "manual dealer," that is, the U-Haul rental transactions at Jim's Auto were handled manually; Jim's Auto was not computerized. Its employees completed each U-Haul contract by hand and calculated the taxes that applied to each rental transaction.
On December 10, 1998, Johnson rented a U-Haul trailer from Jim's Auto. Jim's Auto taxed Johnson's trailer rental using a sales-tax rate rather than the proper rental-tax rate, resulting in an overcharge of $3.36. Johnson paid the amount charged.
Johnson, who has a college degree in accounting, works as an accountant at the Mercedes automobile manufacturing plant in Vance. He is the assistant manager of finance and controlling for Mercedes. The U-Haul defendants contend in their brief to this Court that "[i]n that position, [Johnson] has responsibility for the tax issues" at the Mercedes plant. Johnson says that he does not consider himself a tax accountant and that he has never done accounting work for a client in the rental business.
Johnson states that after he rented the U-Haul trailer, he became suspicious as to why he was charged sales tax on a rental transaction. He then consulted his brother, who is an attorney. Johnson's brother advised him that a sales-tax rate should not have been charged on the rental transaction.
On December 16, 1998, Johnson returned to Jim's Auto and rented a U-Haul truck. Jim's Auto again charged a sales tax instead of rental tax on the rental of the U-Haul truck, resulting in an overcharge of $6.39. Despite what he had learned from his brother, Johnson again paid the amount charged by Jim's Auto *309 because, he said, Jim's Auto was convenient and close to his place of work.
On December 17, 1998, Johnson filed the complaint in this case. He initially sued U-Haul Alabama and Jim's Auto. He later amended his complaint to add U-Haul International as a defendant. He alleged, on behalf of himself and a purported class of similarly situated persons, claims of breach of contract, fraudulent misrepresentation, suppression, negligent or wanton supervision and training, conversion, and conspiracy. All of the claims were based upon U-Haul customers' having been charged a sales-tax rate on U-Haul rentals instead of a rental-tax rate. Johnson contended that U-Haul International retained any amount a customer paid for taxes that exceeded the appropriate rental tax the U-Haul defendants remitted to the proper authorities.
Shortly after the complaint was filed, Jim's Auto changed its system for U-Haul transactions from a manual system to U-Haul's computerized "C.A.R.D." system. At the time of the change, Jim's Auto had been a manual dealer for seven months. A U-Haul dealer on the C.A.R.D. system is not required to manually calculate the appropriate tax due on the transactions  the tax is calculated by computer. U-Haul's tax department programs each C.A.R.D. computer with the proper rental-tax rate. Today, every U-Haul dealer in Alabama is on the computerized system. The U-Haul defendants say that dealers using the C.A.R.D. system almost always charged the correct rental-tax rate, but that dealers using a manual system did not.
Johnson states that during the seven months in which Jim's Auto was operating as a manual dealer, it entered into approximately 118 rental contracts for U-Haul equipment. In all of those transactions, the sales-tax rate of 9% was used to calculate the taxes due from the customer, rather than the rental-tax rate.[1] An employee of Jim's Auto testified that she was trained in U-Haul rental transactions by a representative of U-Haul, that in her training she was instructed to charge sales tax on rental transactions, that Jim's Auto charged sales tax on rental transactions for the seven months it was a manual dealer, and that no official from U-Haul ever corrected the error. U-Haul International audited the rental contracts submitted by manual dealers, using a computer program that located any instance in which a manual dealer failed to collect sufficient taxes on a transaction. If an "under-collection" was discovered, the amount of the under-collection was charged against the dealer's commission. Johnson alleges, however, that whenever a dealer collected more taxes than were due on a transaction, U-Haul International kept the overcharge.
The rental contracts used by U-Haul dealers are standardized forms; the line for applicable taxes is labeled "sales tax." The reverse side of the contract contains the following language:
"Customer shall pay for any licenses, fees or taxes required by any federal, state or municipal law in conjunction with Customer's use of EQUIPMENT."
U-Haul of Alabama states that it passes rental taxes through to its customers on the line on the contract labeled "sales tax" because that is the line provided on its standardized contracts, which are used nationwide, *310 for calculating the tax due. The U-Haul defendants say that the contract uses the term "sales tax" because in almost every other state a sales tax is charged on rental transactions.
After approximately three years of discovery directed toward class-certification issues, Johnson moved in June 2002 to certify a class. The U-Haul defendants opposed that motion. Pursuant to § 6-5-641, Ala.Code 1975, the trial court held a hearing on Johnson's motion for class certification on March 19, 2003. At that time, the court gave the parties an additional 10 days in which to file any supplemental materials. The U-Haul defendants filed an amended answer on April 2, 2003, within the 10-day period as computed pursuant to Rule 6(a), Ala. R. Civ. P., asserting the defense of the voluntary-payment doctrine, as well as a supplemental memorandum in opposition to class certification in which they argued that the voluntary-payment defense precluded the certification of a class. The pleadings before us and before the trial court at the time of its ruling on class certification were the complaint and the answer as last amended. On June 3, 2003, the trial court entered an order certifying the following class only as to Johnson's breach-of-contract claim:
"Any person who (a) at any date and time within the state of Alabama; (b) entered into a standard form contract with the defendants, for the leasing or renting of any motorized or non-motorized vehicle (including non-motorized trailers and other support rental equipment); (c) leased or rented any motorized or non-motorized vehicle (including non-motorized trailers and other support rental equipment) from the defendants; (d) was charged `sales tax' by the defendants for said lease or rental of tangible personal property in accordance with the defendants' standard form contract; and (e) who paid said sales tax to the defendants as part and parcel of the cost of rental of said tangible personal property."
The order did not address the U-Haul defendants' recently asserted voluntary-payment defense. The trial court stated only that it was "not considering U-Haul's defenses."
On July 1, 2003, the U-Haul defendants filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the class-certification order, challenging, among other things, the failure of the trial court to address in its order the effect of their voluntary-payment defense. On August 20, 2003, the trial court amended its order to narrow the definition of the certified class as follows:
"The Court amends its order to narrow its certified class to only those persons who rented and paid sales tax so renting at any time within the six years prior to filing of the complaint. This recognizes the six year statute of limitations applicable to breach of contract claims as the Defendants correctly pointed out in their motion to alter, amend or vacate."
The trial court also stated in that order that "[a]ll other grounds in the Defendant's [sic] motion to alter, amend or vacate are considered and denied."
The U-Haul defendants appeal pursuant to § 6-5-642, Ala.Code 1975, authorizing an immediate appeal of a class-certification order.

II. Standard of Review
This Court reviews a trial court's class-certification order to determine whether the court exceeded its discretion in entering the order, but we review de novo the question whether the trial court applied the correct legal standard in reaching its decision to certify a class. Compass Bank v. Snow, 823 So.2d 667 (Ala.2001). We will not disturb a trial court's *311 class-certification order without a showing that in entering the order the court exceeded the permissible limits of its discretion. General Motors Acceptance Corp. v. Dubose, 834 So.2d 67, 70 (Ala.2002).
If Johnson failed to meet his evidentiary burden as required by Rule 23, Ala. R. Civ. P., then the trial court exceeded its discretion in certifying the class. Compass Bank, 823 So.2d at 672. Johnson must establish all of the criteria set forth in Rule 23(a) and one of the criteria set forth in Rule 23(b). Ex parte Gold Kist, Inc., 646 So.2d 1339, 1341 (Ala.1994). Rule 23(a) provides:
"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
The additional Rule 23(b) criteria relied upon by the trial court certifying that class was "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." We must determine, therefore, whether the trial court exceeded its discretion in certifying the class and whether it applied the correct legal standard in reaching its decision.

III. The U-Haul Defendants' Objections to Class Certification

A. Overview
The U-Haul defendants argue that the trial court exceeded its discretion in certifying the class because, they say, (1) the members of the class are not readily ascertainable, (2) the voluntary-payment defense precludes the certification of the breach-of-contract claim in this case, (3) Johnson does not meet the typicality and adequacy-of-representation requirements under Rule 23(a), Ala. R. Civ. P., and (4) the trial court's definition of the class is too broad.
For the reasons set forth in Part III.B. of this opinion, we conclude that the trial court exceeded its discretion in certifying a class without addressing the question of the effect upon its certification of the U-Haul defendants' voluntary-payment defense. We pretermit consideration of the U-Haul defendants' other objections to class certification because, depending upon the resolution of the issues surrounding the voluntary-payment-defense issue, the remaining objections may become moot.

B. The Voluntary-Payment Defense
The U-Haul defendants' primary defense to Johnson's claim and to his asserted right to sue on behalf of a class is based upon the voluntary-payment doctrine. This Court has long recognized the defense of voluntary payment:
"It has been the law in Alabama for over 150 years that where one party, with full knowledge of all the facts, voluntarily pays money to satisfy the colorable legal demand of another, no action will lie to recover such a voluntary payment, in the absence of fraud, duress, or extortion."
Mt. Airy Ins. Co. v. Doe Law Firm, 668 So.2d 534, 537 (Ala.1995). A breach-of-contract claim is precluded by proof that the party asserting the claim voluntarily paid what he or she is seeking to recover. Id. Nevertheless, "[i]t is well settled that money voluntarily paid under a mistake of fact may be recovered, even where the *312 party paying had means of ascertaining the real facts. However, it is equally well settled that money voluntarily paid with full knowledge of the facts but by reason of mistake of law cannot be recovered." Sherrill v. Frank Morris Pontiac-Buick-GMC, Inc., 366 So.2d 251, 257 (Ala.1978) (Torbert, C.J., concurring specially) (citations omitted). As previously noted, the trial court did not address in its class-certification order arguments concerning the voluntary-payment defense that the U-Haul defendants asserted after the class-certification hearing.
The U-Haul defendants argue that the customers' claims are barred by the voluntary-payment doctrine because each customer knew the exact amount he or she was paying in taxes, which amount was stated on the contract, but each paid the stated tax anyway. The U-Haul defendants also argue that determining whether the voluntary-payment doctrine bars the claim of any given customer will require an individualized inquiry to determine whether the customer paid the tax voluntarily or under a mistake of fact. Finally, the U-Haul defendants argue that the trial court exceeded its discretion in failing to address this argument in its class-certification order.
Johnson argues that under the facts of this case, the voluntary-payment doctrine does not prevent class certification of the breach-of-contract claim. Under the contract with each customer, the U-Haul defendants were entitled to pass on to that customer only those taxes actually due on the rental transaction, even though the amount was entered on a line entitled "sales tax." When the U-Haul defendants knowingly overcharged customers and U-Haul International knowingly retained the overpayments, Johnson maintains, the customers were charged more than they contractually agreed to pay, and the U-Haul defendants thereby breached the contracts it had entered into with those customers.
This Court has previously reversed class-certification orders based upon the voluntary-payment doctrine. See, e.g., Stone v. Mellon Mortgage Co., 771 So.2d 451 (Ala.2000); and Smart Prof'l Photocopy Corp. v. Childers-Sims, 850 So.2d 1245 (Ala.2002). In Stone, the plaintiffs paid a fee to have loan-payoff information provided to their lawyer by facsimile transmission, information they could have received by mail without cost. The "fax fee" was clearly disclosed on the payoff statement sent to the lawyer by the loan company. We concluded that the Stones paid the fax fee "with full knowledge of all the facts" and that there was no fraud, duress, or extortion that negated the voluntary nature of their payment of the extra charge. 771 So.2d at 456. In Smart, Smart Photocopy had entered into contracts with health-care businesses under which Smart Photocopy responded on behalf of the businesses to requests for copies of medical records, and it billed the costs of those copies to the persons making the requests. Smart Photocopy charged those persons requesting copies more than the "reasonable" amounts allowed by Alabama statutory law. We reversed the class-certification order because individual inquiries were necessary for each claimant to prove that his or her attorney mistakenly paid the copying costs and did not voluntarily agree to pay more than the statutory amount allowed.
We agree with the U-Haul defendants that the trial court exceeded its discretion in failing to address the voluntary-payment doctrine in its class-certification order. We therefore vacate the order certifying the class and remand the case to allow the trial court to conduct such further proceedings as may be necessary to consider the effect on the issue of class *313 certification of the U-Haul defendants' assertion of the voluntary-payment defense. On remand, the trial court may consider whether the U-Haul defendants are entitled to assert the defense by reason of having a colorable claim to the disputed amounts,[2] and/or whether, considering the various statutes discussed herein, the conduct of the U-Haul defendants violates public policy as established by the Legislature so that a public-policy exception to the voluntary-payment doctrine applies in this case.[3]
Should the trial court conclude that the defense of voluntary payment is indeed available, the trial court must then consider, in addition to all other relevant considerations, the U-Haul defendants' objections to class certification based upon typicality and adequacy of representation by reason of Johnson's two separate transactions in determining whether to certify a class.

IV. Conclusion
The trial court exceeded its discretion in certifying the class as to Johnson's breach-of-contract claim without considering the applicability and effect, if any, of the voluntary-payment doctrine. We therefore vacate the class-certification order and remand the cause for further proceedings consistent with this opinion.
ORDER VACATED; REMANDED WITH DIRECTIONS.
HOUSTON, SEE, BROWN, HARWOOD, and WOODALL, JJ., concur.
JOHNSTONE, J., concurs specially.
STUART, J., concurs in the result.
JOHNSTONE, Justice (concurring specially).
I concur in the main opinion. Although I agree that the class-certification order should address the effect, if any, of the defendants' affirmative defense of voluntary payment on class certification, I write specially to assure that my concurrence is not interpreted as a suggestion that an affirmative defense can in any case, much less should in this case, foreclose class certification.
In Stone v. Mellon Mortgage Co., 771 So.2d 451 (Ala.2000), this Court held not that the defense of voluntary payment defeated class certification but that the defense of voluntary payment, not sufficiently disputed by the class-representative plaintiffs on the facts, warranted the summary judgment entered by the trial court against the class-representative plaintiffs on the merits of their claims for money had and received and for unjust enrichment. *314 In Smart Professional Photocopy Corp. v. Childers-Sims, 850 So.2d 1245, 1249-52 (Ala.2002), this Court held not that an affirmative defense defeated class certification but "that the necessity of individualized testimony from each class member to prove an essential element of the cause of action [asserted for the class member] defeat[ed] class certification." 850 So.2d at 1249 (citing Reynolds Metals Co. v. Hill, 825 So.2d 100 (Ala.2002), to the same effect).
Courts should be skeptical of a putative class-defendant's claim that an affirmative defense would require individualized inquiries that foreclose class certification. The defense lawyer who is unable to find a bone to pick with every individual class member will be equally unable to find a big corporate client to defend against a class action. Indeed, respectable authority holds that "an inquiry into a claimed affirmative defense impermissibly allows an issue going to the merits of the litigation to intrude upon the class certification analysis required by Rule 23." Cook v. Rockwell Int'l Corp., 151 F.R.D. 378, 386 (D.Colo.1993), and Rishcoff v. Commodity Fluctuations Sys., Inc., 111 F.R.D. 381, 382 (E.D.Pa.1986). Accord Cherokee Nation of Oklahoma v. United States, 199 F.R.D. 357 (E.D.Okla.2001). See Gavron v. Blinder Robinson & Co., 115 F.R.D. 318 (E.D.Pa.1987); Shankroff v. Advest, Inc., 112 F.R.D. 190 (S.D.N.Y.1986); Fickinger v. C.I. Planning Corp., 103 F.R.D. 529 (E.D.Pa.1984); Neuberger & Berman v. Northern Elec. Co., 70 F.R.D. 447 (S.D.N.Y.1975); Kesler v. Hynes & Howes Real Estate, Inc., 66 F.R.D. 43 (S.D.Iowa 1975); Richardson v. Hamilton Int'l Corp., 62 F.R.D. 413 (E.D.Pa.1974); Fraley v. Williams Ford Tractor & Equip. Co., 339 Ark. 322, 5 S.W.3d 423 (1999). That other respectable authority holds to the contrary, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 295 (1st Cir.2000), does not diminish the potential for the misuse of illusory or only fractionally applicable affirmative defenses to thwart the certification of legitimate classes.
If the trial court concludes that an affirmative defense can, as a matter of legal theory, defeat class certification, the question will remain whether the particular affirmative defense of voluntary payment defeats class certification in this particular case. The defendants contend that this affirmative defense would require an individualized inquiry of each class member to determine whether he or she overpaid the tax voluntarily, or mistakenly. As the main opinion correctly observes, one of the essential elements of the affirmative defense of voluntary payment is that the plaintiff paid the money "with full knowledge of all the facts," Mt. Airy Ins. Co. v. Doe Law Firm, 668 So.2d 534, 537 (Ala.1995). Because the defendants bear the burden of proof of an affirmative defense, unless, in the class-certification proceedings on remand, the defendants produce substantial evidence that a substantial number of putative class members overpaid the taxes "with full knowledge of all the facts," id., the trial court can and should, in my opinion, reject the defendants' contention that this affirmative defense forecloses class certification.
NOTES
[1] Pursuant to Alabama law, a use tax is imposed on the lessor in connection with a rental transaction, whereas a sales tax is imposed on the purchaser in connection with a sales transaction. Alabama law allows a lessor to pass on to the consumer any use taxes due on rental transactions. It is undisputed that the use-tax rate is lower than the sales-tax rate. § 40-23-60 et seq., Ala.Code 1975.
[2] Section 40-23-26(d), Ala.Code 1975, discusses sales taxes in Alabama and provides as follows:

"In the event that any sum is collected from a consumer that purports to be collected because of this section, whether or not the amount is actually provided for hereunder, then any such sum, except such as is collected solely because of rounding the correct amount of tax upward to the nearest cent, shall be paid to the Department of Revenue for the purposes provided in Section 40-23-35."
(Emphasis added.)
[3] See Pratt v. Smart Corp., 968 S.W.2d 868 (Tenn.Ct.App.1997), in which the Tennessee Court of Appeals, relying on Newton v. Cox, 878 S.W.2d 105 (Tenn.1994) (voluntary-payment doctrine does not apply in a situation that involves a transaction that violates public policy), held that the voluntary-payment doctrine did not bar the plaintiffs' claims that Smart Corporation had charged more for photocopies than was reasonable under the Tennessee Medical Records Act of 1974. In Smart Professional Photocopy Corp. v. Childers-Sims, supra, the issue whether public policy was violated so as to justify an exception to the availability of the defense of voluntary payment was not raised in the trial court or before us on appeal.