**James E. SCOTT, et al., Plaintiffs,**

v.

**FAIRBANKS CAPITAL CORP., Defendant.**

No. C–3–02–001.

United States District Court, S.D. Ohio, Western Division.

Aug. 20, 2003.

Gary Klein, Grant & Roddy, Boston, MA, Matthew Brownfield, Cincinnati, OH, for Plaintiffs.

Cynthia G. Swann, David M. Souders, Weiner Brodsky Sidman Kider PC, Washington, DC, Thomas Allen Knoth, Thompson Hine, Dayton, OH, for Defendant.

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION FOR A RULING ON THEIR MOTION TO FILE A FIRST AMENDED COMPLAINT (DOC. # 35–2); PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT (DOC. # 25) IS SUSTAINED; SAID AMENDED COMPLAINT IS TO BE FILED FORTHWITH; DEFENDANT'S MOTION FOR ORAL ARGUMENT ON THE MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. # 29) IS OVERRULED AS MOOT; PLAINTIFFS' MOTION FOR LIMITED DISCOVERY, PURSUANT TO FED. R. CIV. P. 56(F) (DOC. # 35–1) IS SUSTAINED IN PART AND OVERRULED IN PART; PLAINTIFF IS GRANTED FORTY–FIVE (45) DAYS FROM DATE TO CONDUCT LIMITED DISCOVERY AS TO WHETHER THE AMOUNT OF ATTORNEY'S FEES COLLECTED BY DEFENDANT WAS REASONABLE AND WHETHER THEY WERE INCURRED IN ENFORCING THE TERMS OF THE MORTGAGE OR IN REINSTATEMENT; PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT IS DUE TWENTY (20) DAYS FROM THE COMPLETION OF SAID DISCOVERY; THE COURT WILL DEFER RULING ON DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT (DOC. # 34) UNTIL IT IS RIPE FOR DECISION

RICE, Chief Judge.

Plaintiffs James and Joan Scott ("Plaintiffs" or "the Scotts") have brought this putative class action, alleging that Defendant Fairbanks Capital Corporation ("Fairbanks") has violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a et seq., and Ohio law by attempting to collect attorney's fees from them. On or about March 23, 1998, Plaintiffs borrowed $104,800 from the National Consumer Services Corporation by signing a note. The note was secured by a mortgage on the Scotts' residential real estate. Paragraph 6(E) of the note provides:

> If Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include reasonable attorney's fees, for example, if awarded by a court judgment.

Doc. # 1, Ex. A. In 1999, the Scotts defaulted on their loan.

On November 12, 1999, Fairbanks initiated a foreclosure action against the Scotts in the Montgomery County Court of Common Pleas. Soon thereafter, Plaintiffs and Fairbanks entered into a forbearance agreement.[1] Under this agreement, the

---

1. The forbearance agreement, attached as Exhibit C to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Leave to File an Amended Complaint, indicates that it is made on September 4, 1998, between the Scotts and Fairbanks. However, the agreement indicates the status of the loan as of November 22, 1999; the payoff amounts as of that date; payments that are required on or before November 27, 1999; and the need for the Scotts to provide proof of insurance no later than December 27, 1999. In addition, paragraph 5(I) states that "Borrower(s) understand that it is expressly agreed that the foreclosure action will continue and Final Judgment will be filed...." Based on these provisions, it appears that the agreement was made between November 12, 1999, when the foreclosure action was initiated, and November 27, 1999, when Plaintiffs were first obligated to make a payment under the agreement. The Court further notes that Exhibit C contains only the first two pages of the agreement and is in-

foreclosure action would continue, but no Sheriff's sale would occur, provided that Plaintiffs made the payments required by the agreement. On August 8, 2000, the state court entered judgment against Plaintiffs, stating that the sale of the residence would proceed if the Scotts did not pay the full amount due within three days of the date of that judgment. The judgment did not include an award for attorney's fees.

According to the affidavit of Mr. Harry Henderson, a Loan Service Representative for Fairbanks, Mr. Scott contacted Fairbanks on August 23, 2000, requesting information about reinstating the mortgage loan. Mr. Henderson indicated that a payment of $12,297.46, which included attorney's fees, was required to reinstate the loan. On August 25, 2000, the Scotts sent a certified check for that amount to Fairbanks. On September 8, 2000, the state court judgment was vacated.

On April 30, 2001, the Scotts received correspondence from Fairbanks which stated they owed Defendant "foreclosure and attorney's fees," totaling $4878.00. On January 3, 2002, the Scotts sold their home. The payoff statement they received from Fairbanks included various charges, including unpaid late fees, unpaid NSF charges, funds advanced on borrower's behalf, property inspection fee, and interest on advances.

On January 2, 2002, Plaintiffs initiated the instant litigation against Fairbanks, alleging that Defendant has violated the FDCPA and Ohio law. According to Plaintiffs, under *Miller v. Kyle*, 85 Ohio St. 186, 97 N.E. 372 (1911), a provision in a mortgage contract requiring one party to pay the other's attorney's fees, in the event of a default, is unenforceable under Ohio law. In their Complaint, Plaintiffs

alleged that, despite this prohibition, Fairbanks has repeatedly insisted that they pay attorney's fees incurred in connection with the foreclosure action against them, occasioned as a result of Plaintiffs' non-payment of the above note. Plaintiffs asserted that Defendant has violated a number of provisions of the FDCPA by attempting to collect attorney's fees from them. Plaintiffs also set forth claims under Ohio law for breach of contract, intentional misrepresentation and unjust enrichment, all of which arise out of Defendant's efforts to collect attorney's fees.

Plaintiffs have sought leave to file a First Amended Complaint (Doc. # 25), expanding their claims against Fairbanks to include allegations that Defendant required them to pay "padded charges," *i.e.*, additional fees for, *inter alia*, funds advanced on borrower's behalf, property inspection fees, unpaid other fees, and unpaid NSP charges. The Scotts allege in their proposed Amended Complaint that Fairbanks sought to collect these fees in the context of their loan reinstatement and their loan payoff.

In response to Plaintiffs' action, Defendant filed a Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment (Doc. # 13), which the Court treated as a one for summary judgment. In its Motion, Defendant had argued that it received a judgment of foreclosure from the Montgomery County Court of Common Pleas, which was vacated when the Scotts entered into a reinstatement agreement with Fairbanks. Defendant represented that the reinstatement agreement obligated Plaintiffs to become current on their payments under the note and to pay the expenses incurred in the foreclosure action. On February 29,

complete. Among other things, the signature page is missing; thus, it is not clear that this

document was, in fact, executed.

2003, the Court overruled Defendant's Motion, observing that Defendant had failed to substantiate its assertions with evidence, as that term is used in Rule 56 (Doc. # 33). In particular, the Court noted that Defendant had not supplied a copy of the reinstatement agreement or even an affidavit describing that document (*id.* at p. 6). This Court also addressed the issue of whether a provision in the reinstatement agreement, requiring Plaintiffs to pay attorney's fees, can be enforced under Ohio law. The Court indicated that the holding of *Miller* may be inapplicable in light of Defendant's argument that Plaintiffs' liability for attorney's fees flowed from the reinstatement agreement rather than from the note itself. Believing that this litigation could be resolved through the submission of an additional motion for summary judgment, the Court directed Defendant to file a renewed (and properly supported) motion for summary judgment within twenty days from that date.

Pending before the Court is Defendant's Supplemental Motion for Summary Judgment (Doc. # 34). Also pending is Plaintiffs' Motion for Leave to File a First Amended Complaint (Doc. # 25); their Motion Seeking a Ruling on their Pending Motion to Amend (Doc. # 35–2); their Motion for Limited Discovery, pursuant to Fed.R.Civ.P. 56(f) (Doc. # 35–1), filed in response to Defendant's Supplemental Motion for Summary Judgment; and Defendant's Motion for Oral Argument on its Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment (Doc. # 29). On February 28, 2003, the Court ruled upon Defendant's Motion for Judgment on the Pleadings (Doc. # 33). Defendant's Motion for Oral Argument on

that Motion (Doc. # 29) is, accordingly, OVERRULED as MOOT. Turning to the remaining motions, the Court will begin with Plaintiffs' Motion For Leave to File a First Amended Complaint,[2] following which it will address Plaintiffs' Motion for Rule 56(f) Discovery. For the reasons assigned, Plaintiffs' Motion for Leave to File a First Amended Complaint is SUSTAINED. Plaintiffs' Motion for Rule 56(f) discovery is SUSTAINED in PART and OVERRULED in PART. The Court will defer ruling on Defendant's Supplemental Motion for Summary Judgment until it is ripe for determination.

I. *Plaintiffs' Motion to For Leave to File First Amended Complaint (Doc. # 25)*

■ Plaintiffs have sought leave to file a First Amended Complaint, which joins another representative plaintiff, Ms. Deborah Kline Ellis ("Kline"),[3] and adds allegations of additional wrongful charges imposed by Fairbanks, *i.e.,* the "padded charges," which were allegedly sought in connection with the loan reinstatement and the loan payoff. Leave to file an amended complaint "shall be freely given when justice requires." Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Two factors that must be considered in determining whether to grant such leave are whether the amendment would be prejudicial to the other party and whether the amendment would be a futile gesture.

Defendant has opposed Plaintiffs' Motion, asserting a myriad of bases for denying Plaintiffs' request to file the proposed Amended Complaint. *First,* Defendant argues that some of the claims are barred by

---

**2.** In light of the fact that the Court will address Plaintiffs' Motion to File a First Amended Complaint at this time, their request for a ruling on same (Doc. # 35–2) is SUSTAINED.

**3.** Plaintiffs have referred to the proposed additional Plaintiff as "Kline," while Defendant uses "Ellis." Without making any judgment as to which is more appropriate, the Court will use the shorthand employed by Plaintiffs.

the statute of limitations. *Second,* it asserts that joinder of the newly-named Plaintiff is inappropriate, because the factual circumstances giving rise to her claims are fundamentally different than the Scotts' claims. *Third,* Defendant argues that Plaintiffs' new claims are too vague and conclusory and, thus, fail to meet the pleading requirements of Rule 8. *Fourth,* Defendant argues that its charges were permitted under the contracts. *Fifth,* Fairbanks contends that Plaintiffs have waived and released their claims. *Sixth,* it asserts that Plaintiffs' claims are barred by the voluntary payment doctrine. The Court will address each of the arguments in turn.

### A. *Statute of Limitations*

Defendant asserts that the Scotts' proposed amendments regarding the padded charges do not relate back to the date of the filing of the original Complaint and, therefore, their FDCPA claims based on those charges are barred by the statute of limitations.[4] Rule 15(c) governs whether amendments of a pleading relate back to the date of the original pleading. It states, in pertinent part:

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided for by Rule 4(m) for service of the summons and complaint,

the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c). As explained by the Sixth Circuit:

[Rule 15(c)] is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.

*Brown v. Shaner,* 172 F.3d 927, 932 (6th Cir.1999). Thus, Rule 15(c) permits a party to add a new legal theory, as long as it arises out of the same conduct, transaction or occurrence as the original claims. *Miller v. American Heavy Lift Shipping,* 231 F.3d 242, 248 (6th Cir.2000).

■ In the present case, Plaintiffs alleged in their original Complaint, which was filed on January 2, 2002, that Fairbanks has wrongfully attempted to collect attorney's fees related to their foreclosure (Compl.¶ 10). In addition, they alleged that Fairbanks has charged them (and they have paid) substantial "Foreclosure and Attorneys Fees" during the course of their loan (*id.* ¶ 13). Plaintiffs alleged that these charges violated the FDCPA and Ohio law. Plaintiffs proposed Amended Complaint adds allegations that, in addition to the alleged wrongful attorney's fees, Fairbanks also sought payment of various unspecified fees, which they call

---

**4.** Fairbanks does not argue that Kline's FDCPA claims are untimely filed.

"padded charges." These padded charges were included along with the attorney's fees on the requests for payment that Plaintiffs received (*see, e.g.,* A. Compl. ¶¶ 12, 14, 36, Ex. B). They arose out of the same mortgage loans, foreclosure proceedings, forbearance agreements, and payoff statements as the attorney's fees. Thus, comparing these allegations with the original Complaint, it is clear that Plaintiffs' proposed claims are based upon the same general conduct that formed the bases for their attorney's fees claims. *See Miller,* 231 F.3d at 249 (new allegations related back to the original complaint when the plaintiff "alleged the very same general set of facts in the amended complaints as he did in the original ones"). Accordingly, Plaintiffs' proposed claims based on the padded charges relates back to the date of their original pleading, *i.e.,* January 2, 2002. Defendant's argument that the Scotts' proposed claims are futile on statute of limitations grounds is without merit.

### B. *Kline's Claims are Sufficiently Factually Similar to the Scotts' Claims*

Defendant challenges the joinder of Plaintiff Kline as an additional class representative, arguing that her claims are factually distinguishable from the Scotts' claims. Defendant argues that, unlike the Scotts, Kline did not reinstate her mortgage but, rather, signed a forbearance agreement with Fairbanks, which required her to take certain actions, to make certain payments, and to forego certain rights. It further argues that Kline has alleged that she signed her forbearance agreement under duress, which places her in a factually different position than the Scotts.

Joinder is generally favored under the federal rules. *United Mine Workers v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with

fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *Lasa Per L'Industria Del Marmo Soc. Per Azioni v. Alexander,* 414 F.2d 143, 147 (6th Cir.1969) ("The intent of the rules is that all issues be resolved in on action, with all parties before one court, complex though the action may be."). "Joinder promotes judicial economy, trial convenience and expedites the final determination of disputes." *State of Ohio v. Louis Trauth Dairy, Inc.,* 856 F.Supp. 1229, 1239–40 (S.D.Ohio 1994) (Spiegel, J.).

■ The criteria for permissive joinder is set forth in Fed.R.Civ.P. 20, which provides, in pertinent part:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Fed.R.Civ.P. 20(a). Thus, Rule 20 sets forth two criteria, both of which must be met in order for joinder to be proper: (1) a common question of law or fact, and (2)

that the case arises out of the same transaction, occurrence, or series of transactions or occurrences. *See James v. Gilmore*, 389 U.S. 572, 88 S.Ct. 695, 19 L.Ed.2d 783 (1968).

The common question requirement is usually easily met. Herein, it is apparent from the Complaint and the Exhibits attached thereto that the claims of each of the Plaintiffs raises common questions of law or fact. Both Kline and the Scotts assert that Fairbanks cannot, under Ohio law, collect attorney's fees and the alleged padded charges. All Plaintiffs assert that similar padded charges were assessed, and they have relied upon the same legal theories for their claims. Thus, there is a common question of law as to whether the collection of attorney's fees and padded charges, in connection with the collection of consumer debts, is permissible, as a matter of law.

The transactional relatedness issue is not so clear-cut. Although an easy requirement to articulate, this test is often difficult to apply, and requires a case-by-case analysis. *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 231–32 (M.D.Tenn.2001). "[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974) (cited with approval by *Crutcher v. Com. of Ky.*, 961 F.2d 1576 (6th Cir.1992)). The Supreme Court and the Sixth Circuit have permitted plaintiffs to join their claims against a common defendant when the defendant has allegedly engaged in a "pattern or practice" of discrimination or wrongful conduct. *United States v. Miss.*, 380 U.S. 128, 142, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965); *Crutcher v. Commonwealth of Ky.*, 1992 WL 98020 (6th Cir.1992) (employees permitted to join together in a suit against their employer for race discrimination, even though they suffered different effects from employer's discriminatory actions). Joinder has been denied, however, if the factual circumstances are not sufficiently similar to make a single trial desirable for the administration of their claims. *Brown v. Worthington Steel*, 211 F.R.D. 320, 324–25 (S.D.Ohio 2002) (Sargus, J.)(overruling a motion to amend the complaint, reasoning that, although both the plaintiff and the proposed additional plaintiff alleged that they had been denied promotions due to their race, there was no suggestion in the proposed complaint that the two worked at Worthington Steel during the same time frame, in the same department, at the same job position, or under the same supervisor); *see Insolia v. Philip Morris, Inc.*, 186 F.R.D. 547, 549 (W.D.Wis.1999) ("The general consensus that emerges from [securities fraud] cases is that Rule 20 demands more than the bare allegation that all plaintiffs are victims of a fraudulent scheme perpetrated by one or more defendants; there must be some indication that each plaintiff has been induced to act by the same misrepresentation."); *Nelson v. Aim Advisors, Inc.*, 2002 WL 442189 (S.D.Ill.2002) (severing claims of several investors and shareholders against numerous different, even though the plaintiffs brought claims under identical federal statutory provisions). "Mere factual similarity is not sufficient to compel joinder." *McCormick v. Mays*, 124 F.R.D. 164 (S.D.Ohio 1988) (Weber, J.).

Herein, Plaintiffs assert that their claims are sufficiently similar in that they were both subjected to the same types of fees and the same actionable collection activities. In particular, the Scotts and Kline both assert that Defendant wrongfully demanded from them attorney's fees and other charges that were not contemplated by their loan documents. They further argue that it is irrelevant that the

Scotts reinstated their loan while Kline did not. The Court agrees.

The Scotts and Kline have made claims against Fairbanks under the identical federal statute and have alleged that Fairbanks sought attorney's fees and padded charges from both of them. Initially, the Scotts and Kline signed identical mortgage agreements. Following default by the Scotts and the institution of foreclosure proceedings by Fairbanks against them, those parties entered into a forbearance agreement and ultimately reinstated the Scott's loan. Subsequently, the Scotts requested and received a payoff quote and sold their home to satisfy their loan obligations. After defaulting on her mortgage loan, Kline likewise signed a forbearance agreement in order to prevent foreclosure of her home. Although she was unable to meet her obligations under that Agreement and thus did not reinstate her mortgage, she (like the Scotts) requested a payoff amount and sold her home to avoid the potential loss of her equity in the foreclosure process. Notably, the Scotts' and Kline's satisfaction (or not) of their obligations under their respective forbearance agreements did not alter Fairbank's alleged conduct in seeking attorney's fees and padded charges as part of those agreements or for purposes of loan payoffs. Thus, the fact that the Scotts reinstated their mortgage prior to requesting a payoff amount, while Kline did not (thus providing the Scotts with an additional claim based on the reinstatement), is merely a minor difference among the Plaintiffs. Upon review of the submissions of the parties, the Court concludes that the Scotts' and Kline's transactions are sufficiently similar to be viewed as a series of transactions by Defendant. Accordingly, Plaintiffs' Motion to File an Amended Complaint, joining Kline as a party-plaintiff, is SUSTAINED.

### C. Plaintiffs' Proposed Claims are Adequately Pled

Defendant argues that Plaintiffs' new claims are not defined in a manner sufficient to give Fairbanks fair notice of the nature of their claims. It contends that Plaintiffs have failed to explain the meaning of "padded charges," how these charges were "padded," when these charges accrued, and what makes them unauthorized, unspecified, unexplained or unreasonable. Finally, Defendant argues that the Complaint fails to specify what provisions of Ohio law it allegedly violated.

In their proposed Amended Complaint, the Scotts allege that Fairbanks assessed fees entitled "BPO's", "corporate advances," "funds advanced on borrower's behalf," "unpaid other fees," and "property inspections." (A.Comp.¶ 1). In particular, they assert that, on or about April 30, 2001, Fairbanks sent them correspondence demanding "property inspections and BPO's" totaling $447.45, and "corporate advances" totaling $3,519.65 (id. ¶ 12). The Scotts further allege that Fairbanks demanded $3,529.65 for "funds advanced on borrower's behalf" and $508.12 in "unpaid other fees" as part of the payoff amount after the sale of their home (id. ¶ 20). The Scotts substantiated these allegations by attaching correspondence from Fairbanks to their Amended Complaint (Ex. B & F). Kline also alleges that Fairbanks included padded charges to her payoff quote. She alleges that the payoff quote provided by Defendants included a $2,849 in attorney's fees, $4,695.96 for "funds advanced on borrower's behalf," $801.15 for "unpaid other fees" and $578.93 for "escrow/impound overdraft." (Id. ¶ 39). Kline has also provided, as Exhibit E, the payoff quote from Fairbanks.

Upon review of the proposed Amended Complaint, the Court concludes that Plaintiffs have adequately defined the "padded charges" of which they complain.

They have set forth the names given to the charges, amounts of those charges, and when Fairbanks attempted to collect those charges from them. The fact that Plaintiffs cannot further identify the nature of those fees is precisely the reason that Plaintiffs have brought suit. In light of the fact that Plaintiffs have identified the padded charges using terminology and documents sent to them by Defendant, Fairbanks should be able to ascertain, based on its own records, the padded charges at issue. In addition, Plaintiffs have alleged that these charges were not authorized under the terms of their contracts with Defendants and are impermissible in connection with the collection of consumer debt. They have brought claims for violation of the FDCPA, breach of contract, intentional misrepresentation and unjust enrichment. Thus, Defendant has been apprised of the charges at issue, and Plaintiffs have clearly set forth their legal theories as to why such charges are improper. Accordingly, Plaintiffs have satisfied their pleading obligations with regard to their claims based on the alleged padded charges.

### D. *Whether Fees Were Permitted by the Contracts Between the Parties*

Defendant next asserts that the plain language of Plaintiffs' respective mortgages, notes and forebearance agreements explicitly allow for all of the charges collected by Fairbanks. Specifically, it contends that paragraph seven of Plaintiffs' mortgage provides, in pertinent part:

> 7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.
>
> Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

(Doc. 26, Ex. A & B).[5] Fairbanks argues that courts have interpreted this language

---

5. Defendant asserts in footnote 3 of its Opposition Memorandum that the Court may consider, in addition to the documents attached to the proposed Amended Complaint, the Scotts' forbearance agreement, the Scotts' mortgage contract, and Kline's mortgage contract, all of which Defendant attached to its memorandum. Fairbanks argues that these documents are extensively referred to in Plaintiffs' proposed Amended Complaint and are central to their claims. As stated by the Sixth Circuit, "[u]nder certain circumstances, ..., a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. This occurs when 'a document is referred to in the complaint and is central to the plaintiff's claim.'" *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999) (citation omitted). Where the plaintiff "fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §§ 1327 (2d ed.1990). Plaintiffs do not challenge Defendant's assertion that its exhibits may be con-

to mean that a lender is entitled to incur costs to protect the mortgaged property and the lender's rights therein, and to charge those costs back to the borrower.

Plaintiffs respond that the interpretation and the application of paragraph 7 are more appropriately addressed in a motion for summary judgment, noting that the cases cited by Defendant did not determine whether the charges violated the FDCPA, breached the parties' contracts, were fraudulent, or constituted unjust enrichment. They argue that they have claimed that paragraph 7 has been breached and that Defendant's charges are fraudulent, create unjust enrichment, and violate the FDCPA. Moreover, they argue that Defendant must provide evidence that the charges actually were incurred for work done and that the work was necessary to protect the value of the property or Fairbank's rights in the property.

The plain language of paragraph 7 entitles Defendant, as the lender, to incur costs to protect either the value of the property at issue or its rights thereto.[6] In *Majchrowski v. Norwest Mortgage, Inc.*, 6 F.Supp.2d 946, 964–66 (N.D.Ill.1998), the district court correctly interpreted this language to grant broad discretion to the lender to incur costs to achieve those goals:

> When the borrower breaches any covenant in the Security Instrument or goes into bankruptcy, this language unequivocally permits the lender to take whatever action is necessary to (1) protect the mortgaged property's value and (2) the

lender's rights in the property. Under these circumstances, the lender has full authority to pay for these actions and then charge them to the borrower. There is no limitation on what the lender may do and pay for except that it must be necessary to protect its rights in or the value of the property. The lender's actions do not, for example, have to be reasonable, economical, or fair to the borrower.

6 F.Supp.2d at 964–65; *see Chatman v. Fairbanks Capital Corp.*, 2002 WL 1338492 (N.D.Ill. June 18, 2002) (quoting *Majchrowski*).

Although numerous courts have acknowledged the broad authority that paragraph 7 grants to the lender to incur costs for the protection of the property and its interests therein, they have further recognized that those costs may not be charged to the mortgagor unless they were actually incurred for one of those purposes. *Majchrowski*, 6 F.Supp.2d at 966 (defendant was entitled to charge for foreclosure property inspection, "assuming that [it] actually incurred them"); *Porter v. Fairbanks Capital Corp.*, 2003 WL 21210115 (N.D.Ill. May 21, 2003) (plaintiff's claim that defendant improperly charged for broker price opinions, on the theory that broker price opinion charges do not protect the value of the property, was adequately pled). As stated by the *Chatman* court, "Defendant is authorized to charge 'property preservation' fees for work actually done to protect its property, but De-

---

sidered in determining whether Plaintiffs' proposed claims are futile. In fact, Plaintiffs specifically argue that they have claimed "that paragraph 7 has been breached, and that defendant's charges imposed under paragraph 7 are fraudulent, violate FDCPA, and create unjust enrichment." In light of Plaintiffs' reference to paragraph 7, the Court will likewise consider Defendant's exhibits in determining whether Plaintiffs' proposed claims

would be subject to Rule 12(b)(6) dismissal and, thus, futile.

6. Paragraph 15 of the Security Instrument provides that it will be governed by federal law and the law of the jurisdiction in which the property is located, which, in this case, is the State of Ohio. Accordingly, the Court will apply Ohio law in construing the terms of the instrument.

fendant must actually perform work to receive reimbursement." 2002 WL 1338492 at *4.

■ Plaintiffs' Amended Complaint alleges generally that the contracts between them and Fairbanks do not permit the charges imposed (A.Compl.¶ 45). That allegation may be construed to assert a claim that the specific charges imposed by Fairbanks were not actually incurred or were incurred for a reason other than those permitted by the contract. In light of the fact that Plaintiffs have alleged that they have been unable to obtain information about the "padded charges" from Defendant, the Court will give them the benefit of the doubt at this pleading stage of the litigation. Whether Defendant herein, in fact, incurred charges to protect the value of Plaintiffs' property or their interest therein is a matter which requires properly submitted evidence and, thus, is more appropriately addressed in a summary judgment motion. Accordingly, for purposes of Plaintiffs' Motion for Leave to File an Amended Complaint, the Court cannot conclude that their claims are futile, as a matter of law, based solely on the language of paragraph 7.

### E. Whether Plaintiffs Waived Their Right to Assert Their Claims

Defendant asserts that the proposed new causes of action are futile, because Plaintiffs have waived and released any such claims when they signed their respective forebearance agreements.[7] In particular, Defendant states that the plain language of Plaintiffs' respective forbearance agreements explicitly waive and release any right to make the claims that Plaintiffs are attempting to add (Doc. # 26 at 9).

■ Beginning with Kline, paragraph 8 of her forbearance agreement with Fairbanks, which is attached to the proposed Amended Complaint as Exhibit C, provides, in pertinent part:

8. In consideration for Lender[']s execution of this Agreement and forbearance from further legal proceedings, Borrower hereby waives, discharges and releases Lender or its predecessors which may have sold this debt, and its agents, servants, and attorneys from any and all claims, demands or debts of any type or kind whatsoever, which are in existence on the day of this Agreement's execution or which could have been discovered at that time. Borrower acknowledges and accepts personal service of the summons and complaint. Borrower further waives the assertion against Lender of any and all defenses, which could be raised in the foreclosure proceeding.

(A.Compl.Ex. C). The forbearance agreement between Fairbanks and Kline was signed on September 19, 2001. Kline has alleged that the her payment amount under that agreement included attorney's fees and padded charges. Fairbanks has clearly argued that, under the terms of the agreement, Plaintiff has waived her claims based on these charges. However, Ellis has alleged that she signed that agreement under duress, thus invalidating it (A.Comp. ¶ 27). Even assuming that Defendant is correct, Kline has further alleged that the payoff quote that she received from Fairbanks on September 9, 2002, included amounts for "funds advanced on borrower's behalf" and "unpaid other fees." (A.Compl.¶ 33). Considering only the allegations in the Amended Complaint and the exhibits thereto, the Court can find no basis to conclude that Kline's claims based

---

**7.** Fairbanks infers from the proposed Amended Complaint that the padded charges accrued prior to the signing of the respective forebearance agreements.

on the September 9, 2002, quote have been waived. Accordingly, the Court cannot conclude, at this juncture, that all of Kline's claims are futile due to the release provision in the forbearance agreement.

The Scotts' forbearance agreement, a portion of which Defendant has provided as Exhibit C to its Memorandum in Opposition, provides:

5. **Borrower(s)'s Representation and Warranties.** To induce Lender to forebear from enforcing its rights under the terms of the Note and Mortgage, Borrower(s) make the following representations, warranties and covenants:

i. The amounts set forth in section 1. hereof are accurate and Borrower(s) acknowledge that they are in default under the terms of the Note and Mortgage and in executing this Agreement is seeking to preserve their rights as owner(s) of the property secured by the Mortgage; and

j. Borrower(s) have no claim, offset, counterclaim or other basis for disputing the amounts due and owing described in section 1. of this Agreement; and

k. Borrower(s) have no other claim, cause of action or other basis for asserting any charge against Lender whether arising out of the Loan or any other relationship between Borrower(s) and Lender; and

l. Borrower(s) hereby confirm that this Agreement, the Note (except as modified by this Agreement) Mortgage and any other documents or instruments evidencing the Loan are fully enforceable in accordance with their terms. . . .

h. Borrower(s) has/have not been coerced, threatened or otherwise induced to execute this Agreement except by the consideration furnished by Lender as set forth herein.

(Doc. #26, Ex. C). Plaintiffs assert that this agreement does not bar their claims, arguing this forbearance agreement was one of the deceptive vehicles by which Defendant improperly sought to collect wrongful fees from them. Plaintiffs state that the false statements in that agreement include the statement that Plaintiffs owed attorney's fees and other padded fees when they did not. The Scotts contend that the FDCPA claim based on the forbearance agreement could not be waived by that agreement, because it did not exist until the agreement was executed. The Scotts further assert that they have alleged that the agreement is void and, therefore, it did not release their claims. In addition, they assert that the agreement does not apply to collection efforts and payments made after the agreement was executed.

Assuming, *arguendo*, that the Scotts have released and waived any claims that accrued prior to the execution of the forbearance agreement, the documents attached to the proposed Complaint indicate that Fairbanks sought to collect "padded charges" from the Scotts *subsequent to* the signing of that agreement. In paragraph 14 of the Amended Complaint, the Scotts allege that Defendant sought foreclosure and attorney's fees, in addition to other "unspecified and unauthorized fees" during the course of their loan, both in the context of a reinstatement *and a loan payoff (id.)* (emphasis added). Exhibit F to the Amended Complaint indicates a payoff quote as of January 3, 2002, which included, *inter alia*, fees for unpaid NSF charges, unpaid other fees, funds advanced on borrower's behalf, and a property inspection. Without evidence regarding these fees, the Court cannot conclude that claims based on these fees were included within the previously executed release. Accordingly, the Court cannot conclude that all of the Scotts proposed new claims

would be subject to Rule 12(b)(6) dismissal, due to the release.[8] Defendant's argument that Plaintiffs have waived their claims is more appropriately addressed in a motion for summary judgment.

### F. *Voluntary Payment Doctrine*

Fairbanks asserts that Plaintiffs' claims based on their payment of padded charges is barred by the voluntary payment doctrine. As have many other states, Ohio recognizes that doctrine. As articulated by the Ohio Supreme Court: "In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *State ex rel. Dickman v. Defenbacher*, 151 Ohio St. 391, 395, 86 N.E.2d 5, 7 (1949). Simply stated, "a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir.2001); *see Nationwide Life Ins. Co. v. Myers*, 67 Ohio App.2d 98, 425 N.E.2d 952 (9th Dist. 1980), citing *Cincinnati v. Gaslight & Coke Co.*, 53 Ohio St. 278, 41 N.E. 239 (1895), paragraph three of the syllabus ("A payment made by reason of a wrong construction of the terms of a contract, is not made under a mistake of fact, but under a mistake of law, and if voluntary cannot be recovered back."); *Stone v. Mellon Mortg. Co.*, 771 So.2d 451, 458 (Ala.2000) ("It is well settled that money voluntarily paid under a mistake of fact may be recovered. However, it is equally well settled that money voluntarily paid with full knowledge of the facts but by reason of mistake of law cannot be recovered"). As noted by Plaintiffs, an individual may seek to recover the money paid to the defendant if it was paid under duress, as result of fraud, or due to mistake of fact. *Defenbacher, supra; Keys v. Baldwin*, 9 Ohio Dec. Rep. 737, 1887 WL 437 at *4 (Ohio Super.1887) (payment made under duress may be recovered back); *see also Stone*, 771 So.2d at 458 ("The rule by which the law denies one a recovery for a voluntary payment is subject to an exception where the payment has been procured by a fraud.").

Defendant argues that Plaintiffs have not alleged that their payment of padded charges was anything but voluntary. Defendant cites to the Declaration of James Scott, which as filed as Exhibit A to Plaintiffs' Opposition to Fairbank's Motion for Judgment on the Pleading (Doc. #16), indicating that Scott knew of the sums at issue yet did not dispute those fees prior to the filing of the proposed Amended Complaint. With regard to Kline, Fairbanks notes that she "make[s] a passing, conclusory claim" that her signing of the forbearance agreement was under duress in order to prevent the loss of her home. However, it argues that such a statement is insufficient to establish duress under Ohio law. Plaintiffs respond that they did not have full knowledge of the facts, because they did not understand that nature of and justification for the padded charges and attorney's fees that Fairbanks claimed they owed.[9] They argue that the pay-

---

8. Because the Court concludes that some of the Scotts' claims may fall outside of the release, the Court will not discuss Plaintiffs' additional arguments that the release is void and that the forbearance agreement may constitute false statements under the FDCPA. In addition, the Court makes no ruling, at this time, whether the release is applicable to the Scotts' claims accruing prior to that agreement.

9. Kline has specifically alleged in the Amended Complaint that she unsuccessfully sought information about the nature of the amounts being charged and the exact amount of the foreclosure attorney's fees and other fees being collected (A.Compl.¶ 35).

ments were made under the mistaken belief that they, in fact, owed Fairbanks for those charges. Plaintiffs further argue that the voluntary payment doctrine should not apply to collection transactions, and that their claims may qualify for many of the exceptions to the doctrine.

■■■ Without hazarding to determine whether Plaintiffs' state law claims are precluded by the voluntary payment doctrine, that state law doctrine appears to contradict the plain language of the FDCPA and, thus, it is questionable, at best, whether it is applicable to a federal claim under that statute. The FDCPA protects consumers from abusive debt practices by requiring debt collectors to notify consumers of their rights under the FDCPA and by eliminating unfair practices "such as late-night telephone calls, false representations, and embarrassing communications." *Gradisher v. Check Enforcement Unit, Inc.*, 210 F.Supp.2d 907 (W.D.Mich.2002), citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 398 (6th Cir.1998). Section 1692e(2)(A) of the FDCPA prohibits the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). For example, in *Turner v. J.V.D.B. & Assoc.*, 330 F.3d 991 (7th Cir.2003), a debt collector incorrectly informed the plaintiff that he was still obligated to pay a debt. Unbeknownst to the debt collector, the plaintiff had previously filed for bankruptcy, and the debt at issue had been discharged. The Seventh Circuit reversed the grant of summary judgment for the defendant, indicating that a reasonable jury could conclude as a matter of fact that the defendant had made a misleading statement regarding the legal status of the plaintiff's debt. Thus, as indicated in *Turner*, the FDCPA explicitly protects consumers from false statements by debt collectors regarding the legal status of their debt. It would defy logic to conclude that the FDCPA would protect consumers who challenge these false statements in court prior to paying, yet preclude claims by consumers who, after paying the debt based on the misleading statements, realized the falsehoods. Accordingly, the Court concludes that Defendant may not rely upon the voluntary payment doctrine to preclude Plaintiffs' proposed FDCPA claims. Specifically, Plaintiffs' proposed additional FDCPA claims are not futile, due to that state law doctrine. To the extent that the state law claims may be precluded, that issue may be raised in a subsequent motion to dismiss or for summary judgment.

In summary, the Court concludes that the joinder of proposed Plaintiff Deborah Kline Ellis is proper, because her claims are sufficiently similar to the Scotts. The Court further concludes that Plaintiffs' proposed claims arising out of the "padded charges" related back to their original Complaint, that they have been adequately pled, and that these proposed claims would, at least in part, survive a Rule 12(b)(6) motion to dismiss. Accordingly, the Court concludes that Plaintiffs may file an amended complaint, alleging FDCPA and state law claims based on the padded charges. Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. # 25) is SUSTAINED. Said Amended Complaint is to be filed forthwith.

II. *Plaintiffs' Rule 56(f) Motion for Limited Discovery (Doc. # 35) and Defendant's Supplemental Motion for Summary Judgment (Doc. # 34)*

As suggested by the Court, Defendant has filed a Supplemental Motion for Summary Judgment (Doc. # 34), indicating that Plaintiffs entered into an oral reinstatement agreement with Fairbanks by virtue of the August 23, 2000, telephone conversation between the Scotts and Mr.

Henderson.[10] In both their Opposition Memorandum and their accompanying affidavit, Plaintiffs state that they need to conduct discovery in order to defend against Fairbank's supplemental summary judgment motion. They indicate that they have been surprised by Defendant's assertion that an oral contract exists, and that they need to obtain information about that agreement, such as the contemporaneous notes that Mr. Henderson made regarding the August 23rd telephone call. They further indicate that they may need to depose Mr. Henderson. Finally, Plaintiffs state that Defendant has failed to respond to any discovery requests.

As alternative arguments, Plaintiffs also state that the First Amended Complaint broadens the claims at issue and, thus, Defendant's Motion addresses only a portion of those claims. In particular, Plaintiffs assert that Defendant demanded additional attorney's fees after the loan was reinstated, and that it required payment of more than $4,000 in fees upon the loan payoff, which occurred approximately seventeen months after the loan was reinstated. Plaintiffs argue that, in the event that the Court permits the Amended Complaint to be filed, they are entitled to broad discovery on all of these charges. Thus, they request the opportunity to conduct discovery on all their claims, suggesting that Defendant may be permitted to renew its motion at the completion of discovery.

As an initial matter, the Court notes that, because Plaintiffs' Motion to File an Amended Complaint has been sustained, Defendant's Supplemental Motion for Summary Judgment will not resolve all of the claims in this action. In particular, Defendant's Motion does not address any of the alleged padded charges, nor does it address any alleged requests for the payment of attorney's fees subsequent to the August 23, 2000, conversation between Mr. Scott and Mr. Henderson. Because a number of claims will remain even after resolution of Defendant's Motion, the underlying basis for this Court's direction to Defendant to file a Supplemental Motion, *i.e.*, that the submission of an authenticated copy of the reinstatement agreement could resolve this litigation in its entirety, has been substantially undermined.

Turning to Plaintiff's Rule 56(f) Motion, Federal Rule of Civil Procedure 56(f) provides: "Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." The Sixth Circuit has required strict compliance with this Rule, stating:

> The importance of complying with Rule 56(f) cannot be overemphasized. [I]f the [plaintiff] has not filed either a Rule 56(f) affidavit or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery.

*Cacevic v. City of Hazel Park,* 226 F.3d 483, 487–88 (6th Cir.2000), *quoting Plott v.*

---

10. The Court notes that paragraph 18 of the Scotts' mortgage provides that the Scotts have the right to reinstate their mortgage under certain circumstances. The provision sets forth conditions for reinstatement, including that the Scotts (1) pay all sums due under the mortgage instrument as if no acceleration had occurred, (2) cure any default, (3) pay all expenses incurred in enforcing the security instrument, including reasonable attorney's fees, (4) take any action as Lender may reasonably require to assure that the lien of the security interest, the Lender's rights, and the Scotts' obligation to pay remain unchanged (Doc. # 26, Ex. A).

*General Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir.1995). "Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic*, 226 F.3d at 488.

In support of their Motion, Plaintiffs have submitted the affidavit of Mathew Brownfield, Esq., counsel for Plaintiffs, in which he indicates that Plaintiffs paid attorney's fees to Fairbanks solely because there was a demand for such fees (Brownfield Aff. ¶ 10). He indicates that Plaintiffs assert that there was no agreement authorizing such fees (*id.*). Mr. Brownfield further states that Plaintiffs seek discovery to evaluate the credibility of Mr. Henderson's affidavit, including a review of the notes relied upon by Mr. Henderson and, if necessary, a deposition of him. Mr. Brownfield also indicates states that they wish to discover whether the fees were for services actually provided by counsel to the Defendant and for expenses actually incurred by Defendant, and to determine the basis for and timing of the legal services provided so that they can rebut Defendant's position that the fees were charged exclusively in connection with the alleged reinstatement agreement (*id.* ¶¶ 11–12).

Defendant responds that there is no issue of fact as to the existence of the reinstatement agreement. It points to the affidavit of James Scott, in which he states that "Fairbanks told me that payment of $12,297.46 was required in order to bring my loan account current, including all back due payments, interest, fees and attorney fees." (Scott Aff. ¶ 2). Defendant further argues that Plaintiffs do not need to rely on information from Fairbanks, such as Mr. Henderson's telephone notes, in order to attempt to create a genuine issue of fact as to the existence of the reinstatement agreement. Fairbanks asserts that Mr. Scott, as a party to the oral reinstatement agreement, should be able to present evidence himself as to the agreement's existence.

The Court agrees with Defendant that Plaintiffs have not demonstrated that discovery is necessary in order to create a genuine issue of material fact as to the existence of an oral reinstatement agreement. Defendant has provided evidence that the Mr. Henderson explained the terms by which the Scotts' loan could be reinstated, and that Mr. Scott accepted these terms when he sent a check for the required amount to Fairbanks. Plaintiffs should be fully capable of providing evidence regarding the nature of the conversation between Mr. Henderson and Mr. Scott, without the aid of discovery.[11] However, the Court agrees with Plaintiffs that they should be granted an opportunity to discover whether the amount of attorney's fees that Fairbanks demanded was incurred in connection with the alleged oral reinstatement agreement and whether those fees were for services actually provided by counsel to Defendant. Information regarding the basis for and timing of

**11.** The Court notes that the statement by Mr. Scott does not necessarily support Defendant's position. Paragraph 2 of Mr. Scott's affidavit could indicate that he was informed that his loan balance included attorney's fees, and it does not unambiguously state that he agreed to pay attorney's fees in order to reinstate his mortgage. Put simply, the statement, "Your loan balance is X, including attorney's fees" is not the same as "Your loan balance is X. In order to reinstate your mortgage, you must also agree to pay attorney's fees in the amount of Y." Accordingly, Mr. Scott's affidavit does not provide unambiguous support for Defendant's assertion that Mr. Scott was explained the terms by which the loan would be reinstated and that he accepted those terms.

legal services for Defendant regarding Plaintiffs' mortgage is likely within the sole possession of Fairbanks. In other words, although Plaintiffs should be able to provide, without discovery, evidence regarding the existence of the reinstatement agreement, they are entitled to conduct limited discovery on whether the amount of attorney's fees collected by Fairbanks was reasonable and whether they were incurred in enforcing the terms of the mortgage or in reinstatement. Accordingly, Plaintiff's Motion for Rule 56(f) discovery is SUSTAINED in PART and OVERRULED in PART.

Plaintiffs are permitted forty-five (45) days from date to conduct limited discovery to ascertain whether the amount of attorney's fees collected by Fairbanks was reasonable and whether they were incurred in enforcing the terms of the mortgage or in reinstatement. Plaintiffs' response to Defendant's Supplemental Motion for Summary Judgment is due twenty (20) days after the completion of said discovery. The Court's ruling on Defendant's Motion is deferred until it is ripe for determination.

For the foregoing reasons, Defendant's Motion for Oral Argument on that Motion (Doc. #29) is OVERRULED as MOOT. Plaintiff's Motion for a Ruling on their Motion for Leave (Doc. #35–2) is SUSTAINED. Plaintiff's Motion for Leave to File a First Amended Complaint (Doc. #25) is SUSTAINED. Plaintiff's Motion for Limited Rule 56(f) Discovery (Doc. #35–1) is SUSTAINED in PART and OVERRULED in PART.

The Court will defer ruling on Defendant's Supplemental Motion for Summary Judgment (Doc. #34) until it is ripe for determination.